## A04A0353. WALKER v. THE STATE.
(598 SE2d 875)

JOHNSON, Presiding Judge.

Deramius Walker was indicted on charges of rape, aggravated assault, kidnapping, battery and false imprisonment. A jury acquitted him of all charges, with the exception of the false imprisonment charge. Walker appeals from the judgment of conviction entered on the false imprisonment charge, challenging the sufficiency of the evidence to support that conviction. He also argues that the court erred in showing favoritism toward one of the state's witnesses, refusing to permit the defense to question the victim about her occupation as a stripper, and not allowing him to introduce a draft of a lawsuit which the victim's attorney in a potential civil action was considering filing against Walker and his employer. None of the enumerations has merit, so we affirm the conviction.

1. Walker contends the evidence was not sufficient to support the finding that he committed the crime of false imprisonment. We disagree.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia.*[1] Conflicts in the testimony of the witnesses are for the jury to resolve.[2] As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, the jury's verdict will be upheld.[3]

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Whitfield v. State,* 259 Ga. App. 61 (575 SE2d 899) (2002).

[2] *Whitfield,* supra.

[3] Id.

So viewed, the evidence shows that Walker was a deputy with the Appling County Sheriff's Department. Someone called the sheriff's department and reported that shots had been fired at a residence. Walker and another deputy responded to the call, arriving at the woman's home in separate patrol vehicles. Walker arrested the woman's ex-husband, and Walker's partner arrested the woman's teenage brother in connection with the incident. The woman said she did not want her family members arrested and asked Walker to return later to let her know what happened to them. Walker drove the adult male to jail, and the other deputy drove the teenage male and another juvenile to the sheriff's station.

Later that night, Walker returned to the woman's home alone. They talked on the front porch then walked to the patrol car. Walker told the woman that he would help get her relatives out of jail but said that he could not get a good signal on his cellular phone. He suggested that she ride with him down the road so he could get a better signal. She got into the front passenger seat and Walker began driving.

Walker drove down several dirt roads and then suddenly unzipped his pants. He pulled the woman's head down to his crotch and asked her to perform oral sex on him. She refused and asked to be taken home. Walker ignored her request. Although she could have opened the door and gotten out of the car, the victim did not because "he had a gun." Walker drove a while longer, then stopped the car on a field and told the victim to get out. She got out of the car and started walking. Walker also got out of the car, grabbed her by the back of the neck, pushed her into the back seat of the car, and had sex with her. When he finished, he wiped himself off with paper towels and threw the paper towels onto the ground.

Walker left the victim in the back seat of the patrol car and started driving toward her home. The victim tried to get out of the patrol car, but could not. As Walker approached the victim's residence, he noticed that the other deputy was sitting in his patrol car in front of the home. Walker drove past the house, turned on a dirt road, stopped the car, pulled the victim out of the car, and threw her on the ground in a field. He then drove back to the house, pulled into the driveway for a moment, and left.

The victim walked across the field toward the residence. She approached the other deputy, who was sitting in his patrol car in front of the house. The victim "was shaking real bad. She took off and ran in the house . . . screaming and hollering." The deputy followed her inside and asked her what happened. The victim, who was crying and vomiting, said she wanted to take a bath and did not want to talk about it. She eventually told the deputy what had happened, and he took her to the hospital emergency room for an examination.

Hospital personnel took photographs of bruises on her neck, which she said were inflicted by Walker. A physical examination revealed no trauma to her genitalia.

Agents with the Georgia Bureau of Investigation (GBI) returned to the area where the incident occurred and found paper towels on the ground. DNA testing revealed that fluids on the paper towels were from Walker and the victim. The paper towels were the same type as those found inside the patrol car. Walker admitted that the two had sex but maintained that it was consensual.

A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority.[4] Here, there was evidence that Walker detained the victim in the patrol car without legal authority. The victim, who was not under formal arrest, testified that she did not try to leave the front seat of the car because Walker was armed. She also testified that when she did start to walk away, Walker grabbed her, threw her into the back seat of the patrol car, held her down, and raped her, and that she attempted to get out of the back seat of the car but could not. The jury could have found from the evidence that Walker arrested, detained, or confined the victim without legal authority and without her consent. The evidence was sufficient to support Walker's conviction for false imprisonment.[5]

2. Walker contends the trial court "took the side of the prosecution in the eyes of the jury" when it interrupted defense counsel's cross-examination of a GBI agent and asked questions which, Walker claims, rehabilitated the witness. Specifically, Walker complains that when the victim initially told the agent what Walker did to her, the victim failed to mention that he forced her to perform oral sex on him; yet, he argues, the victim testified at trial that Walker forced her to perform oral sex. Walker states that the court's actions thwarted his efforts to show the inconsistencies in the victim's account of the incident. This argument presents no grounds for reversal.

When Walker asked the GBI agent whether the victim neglected to tell her about the alleged forced oral sex, the agent remarked, "That's correct, but it's not uncommon." Then, on re-cross, defense counsel asked the agent several questions about her written report, which report included no mention of oral sex. The court asked the witness if she authored the report and whether it was written in her words or the victim's words. Defense counsel asked several more questions about the agent's report and said, "That's all I have."

---

[4] OCGA § 16-5-41; *Mayorga v. State*, 225 Ga. App. 496, 497 (484 SE2d 292) (1997).
[5] See *Mayorga*, supra.

The trial court is permitted to ask a witness leading questions in order to elicit the truth or clarify an issue, provided that the court does not violate the statutory prohibition set forth in OCGA § 17-8-57 against expressions or intimation of opinion as to what has or has not been proved as to the guilt of the accused.[6] Nothing about the questions posed by the trial court here constituted the expression or intimation of such an opinion.[7] Furthermore, despite Walker's complaint that the court interrupted his re-cross-examination and "took the questioning from him," the transcript shows that defense counsel was not prevented from continuing his examination of the witness. This enumeration is without merit.

3. Walker complains that the trial court erred in not permitting him to question the victim about being a stripper. Walker argues that moments before he had consensual intercourse with the victim, he told her that he heard she was a stripper. He says that when he asked to see her genitalia, the victim exposed herself to him and allowed him to fondle her. Walker urges that he wanted to cross-examine the victim about the conversation so that the jury could gauge her response and demeanor, and that he should have been allowed to ask her why she did not mention this conversation to the GBI agent; this, he says would "cast another stone against [her] credibility."

Walker has misconstrued the court's ruling. The transcript shows that the trial court ruled that Walker *could*, in fact, ask the victim about the conversation the two had that night, as the conversation was relevant to what happened moments later. Although the trial court told Walker that he could not ask the victim if she worked as a stripper, the court stated that anything that occurred between Walker and the victim that evening would be admissible, and that he could ask the victim "did [Walker] ask you if you were a stripper?" The court agreed that that would be a legitimate inquiry but that Walker could not ask her if she is or is not a stripper.[8]

Despite the court's ruling expressly permitting Walker to cross-examine the victim about the conversation, Walker did not ask the victim about the conversation.[9] Thus, Walker has not shown how the trial court's ruling on this issue prevented him from showing any lack

---

[6] *Barker v. State*, 191 Ga. App. 451, 453 (3) (382 SE2d 115) (1989).

[7] Id.

[8] See generally *Harris v. State*, 257 Ga. 666, 667-668 (1) (b) (362 SE2d 211) (1987) (evidence that rape victim was a prostitute not admissible).

[9] We note that defense counsel did elicit testimony regarding the conversation and the victim's work as a stripper several times throughout the trial, without objection. For instance, defense counsel asked Walker about the conversation, and Walker testified that, "I asked her, I said I hear you're a stripper and she said yeah." On at least three other occasions, defense counsel asked Walker questions about the victim working as a stripper. Thus, Walker succeeded in getting the information to the jury.

of credibility on the part of the victim.[10]

Moreover, we point out that the state has a legitimate interest in protecting witnesses from harassment and intimidation.[11] Thorough cross-examination is a principal means of ascertaining the truth, but a witness has a right to be examined only as to relevant matters and to be protected from improper questions and from harsh and insulting demeanor.[12] The trial court did not err in placing a limit on the questions Walker could ask related to the victim being a stripper.

4. Walker complains that the trial court erred in not permitting him to introduce into evidence a copy of a draft of a civil lawsuit which the victim's attorney in a potential civil action had considered filing against Walker and his employer. Arguing that the document was admissible under OCGA § 24-3-14 (the business records exception to the rule against hearsay), Walker urges that it was relevant because it alleged that he "solicited sexual favors" from the victim, a position inconsistent with the victim's allegations of force in this case. The trial court did not abuse its discretion in disallowing the document.

OCGA § 24-3-14 (b) allows admission of any writing or record made as a memorandum or record of any act, transaction, occurrence, or event if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter.

Here, the personal injury attorney who purportedly drafted the document faxed the document to a second attorney's firm. The second attorney was a witness at the criminal trial, but the attorney who allegedly drafted the complaint was not.

Assuming, without deciding, that a draft of a complaint could be considered a business record, no foundation was laid for its admission in this case. The transcript does not show that the witness had any personal knowledge of the drafting of the complaint or any familiarity with the drafting attorney's business practices or regular course of dealing. In fact, the trial court ruled that Walker could introduce the document if he called as a witness the attorney who drafted the document and faxed it to the witness. We cannot say that the trial court manifestly abused its discretion in excluding the copy of the draft.[13]

*Judgment affirmed. Smith, C. J., and Phipps, J., concur.*

---

[10] See generally *Beck v. State*, 250 Ga. App. 654, 661 (6) (551 SE2d 68) (2001).

[11] See *Harris*, supra.

[12] See id.

[13] See generally *U. B. Vehicle Leasing v. Vision Intl.*, 224 Ga. App. 611, 612 (2) (481 SE2d 597) (1997).

DECIDED APRIL 21, 2004.

*Keith M. Morris*, for appellant.

*Stephen D. Kelley, District Attorney, John B. Johnson III, Assistant District Attorney*, for appellee.