## A04A0758. CAIN v. THE STATE.
### (601 SE2d 415)

MIKELL, Judge.

This appeal was originally filed in the Supreme Court of Georgia, but a portion of the case was transferred to this Court on jurisdictional grounds. *Cain v. State*, 277 Ga. 309, 310 (1) (588 SE2d 707) (2003). In its opinion, the Supreme Court summarized the statement of the case as follows:

Marvin Cain was indicted for armed robbery, hijacking a motor vehicle, theft by receiving stolen property, malice murder, and possession of a firearm by a convicted felon. On

---

[17] (Citation and punctuation omitted.) *In the Interest of S. E. L.*, supra at 732 (3).

Cain's motion, the murder charge was severed from the other charges. Two trials before two different juries were conducted, one for the robbery-related counts of the indictment, the second for the murder count. Convicted of all the charged offenses except theft by receiving stolen property, Cain raises issues on appeal relating to both the murder conviction and the robbery-related convictions.

(Footnote omitted.) Id. at 309-310. The Supreme Court affirmed Cain's murder conviction and transferred his appeal concerning the robbery-related offenses to this Court. Cain's sole enumerated error from that trial is that the court erred in admitting similar transaction evidence. We affirm.

Viewed in the light most favorable to the jury's verdict, the evidence shows that on September 30, 1996, at approximately 9:45 p.m., Pamela Roberts and her 14-year-old daughter, Ebony Mayfield, returned home from a trip to the laundromat and grocery store. Roberts was driving a green 1996 Ford Taurus rental car because her own vehicle was undergoing repairs. Roberts testified that after Mayfield had gone inside the house, a man with a gun approached Roberts. She further testified that the man held the gun to her chest and ordered her to get back in the car, but she refused. At that point, Mayfield came outside and saw the gunman threatening her mother. Mayfield ran back into the house yelling "my mama is being robbed." The gunman grabbed the keys from Roberts and got into the car. At the same time, Roberts's husband, Ivory Lewis, ran out of the house. He testified that he saw the man fumble with the keys, get into the car, and reverse in an effort to pull around another parked car. Lewis further testified that he made eye contact with his wife's attacker. The man drove off in the green Taurus. Roberts immediately called the police. She provided a description of the gunman as having distinctive eyebrows, being between five feet, five inches, and six feet tall, and wearing dark baggy clothing, a hat, and gloves. At trial, Roberts positively identified Cain as her attacker.

The record shows that Cain was driving a green Taurus that same night at approximately 11:00 p.m. when he accompanied his sister, Demetria Cain, to the hospital after her three-year-old son was accidentally shot in the foot.

On October 4, 1996, an off-duty police officer, Thomas Christopher Shaw, saw a green Taurus that matched the description of the vehicle stolen from Roberts. After receiving confirmation from the dispatcher that the tag number on the vehicle matched the one in the police bulletin, Officer Shaw requested backup. Several police cars responded, and Cain was stopped and arrested without incident.

After the arrest, Roberts and Lewis were asked to look at a photographic line-up. Roberts was unable to identify Cain; however, Lewis identified him as the person who stole the car from Roberts.

Tyrone Fennie, Cain's brother-in-law, who was estranged from Demetria Cain at the time in question, testified that Cain spent several nights at his home during the week of September 30, 1996. When approached by police officers on October 4, Fennie consented to a search of his home and actually provided the officers with a key. Detective Reed Pollard of the College Park Police Department testified that in addition to obtaining Fennie's consent, the officers also had a search warrant. They discovered a manila folder containing personal documents belonging to Roberts.

In his sole enumerated error, Cain complains that the trial court erred in admitting evidence of three similar transaction offenses. We disagree.

The standard for admitting evidence of prior crimes is well settled:

> The State must show that (1) it is introducing evidence of an independent offense or act for an appropriate purpose, (2) there is sufficient evidence to establish that the accused committed the independent offense or act, and (3) there is sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

*Tubbs v. State*, 263 Ga. App. 270, 271 (587 SE2d 329) (2003), citing *McKibbons v. State*, 226 Ga. App. 452, 454-455 (3) (486 SE2d 679) (1997). Further, we will not disturb a trial court's determination that similar transaction evidence is admissible absent an abuse of discretion. *Tubbs*, supra.

In this case, evidence of three similar transactions was admitted to show bent of mind and course of conduct. Cain does not argue that he did not commit the similar offenses or that the evidence was admitted for an inappropriate purpose. Rather, he argues that the evidence was inadmissible because the transactions were not sufficiently similar to the crimes charged.

The first similar transaction took place on September 10, 1992, when a police officer observed Cain in a car with a known prostitute driving in south Atlanta. Cain was arrested after the officer saw him throw the prostitute from the car, and he fled from the officer on foot. The car, which had a broken steering column, was stolen. A certified copy of Cain's conviction for theft by receiving was admitted into evidence.

The second offense occurred on August 14, 1993, when Cain was discovered driving a stolen car. Again, he was convicted of theft by receiving, and a certified copy of the conviction was admitted.

The state introduced evidence of the third similar transaction through the testimony of Adele Clary. She testified that on February 13, 1994, a man knocked on her door and informed her that she had a broken windshield on her car. When she went outside, the man showed her a gun and demanded that she give him her keys. She complied. Cain was subsequently arrested and identified by Clary. He was indicted for armed robbery and entered a guilty plea to the offense of robbery.

Contrary to Cain's argument, the trial court did not abuse its discretion in admitting the complained-of evidence. "When similar transaction evidence is being introduced to prove motive, intent, or bent of mind, it requires a lesser degree of similarity to meet the test of admissibility than when such evidence is being introduced to prove identity." (Citation omitted.) *Fields v. State*, 223 Ga. App. 569, 571 (2) (479 SE2d 393) (1996). All that is required is that the incidents are sufficiently similar such that "proof of the earlier event helps prove an element of the later crime." (Citation omitted.) *Tubbs*, supra at 273. Here, the earlier incidents were sufficiently similar to show that Cain had a course of conduct and bent of mind to steal cars, particularly in the southwest area of Atlanta. Accordingly, the trial court did not err in admitting the similar transaction evidence.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JUNE 18, 2004.

*R. Gary Spencer*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General*, for appellee.