### A05A1342. SIMS v. THE STATE.
(621 SE2d 869)

SMITH, Presiding Judge.

Darrell Sims was indicted on charges of rape, kidnapping, and robbery by intimidation. A jury found him guilty on all charges, and he was sentenced as a recidivist. He appeals from the judgment of conviction and sentence, raising the general grounds and contending that the trial court erred in allowing evidence of a similar transaction to be admitted into evidence and by permitting a police sketch to go out with the jury. We find no merit in any of Sims's enumerations of error, and we affirm the judgment.

Construed to support the jury's verdict, the evidence admitted at trial shows that early in the morning of July 20, 2003, Sims approached the victim as she walked to a MARTA station on her way to work. He then turned and followed her, telling her he had a gun and would shoot her, and demanding that she give him her watch and her money. After the victim handed Sims her watch and her cash, he directed her to walk to a storage area under a garage on a nearby construction site and ordered her to undress, all while threatening her with the gun. He then ordered her to get down on the floor on her hands and knees, and he raped her. When Sims penetrated the victim, the condom he was using broke and the victim began crying. Sims withdrew and turned around, facing the door of the storage shed. The victim seized this opportunity to grab the bag Sims had been carrying and flee, wearing no clothing.

The victim ran down the street and noticed a community center, where she told the custodian she had been raped and asked for help. The custodian gave her some clothing and a phone, and the victim called 911. When the police officers arrived, she described her attacker.

The victim's work uniform and underwear were found at the storage area. The officers also recovered a discarded condom wrapper. The victim told the officer that she "definitely would be able to" identify her attacker if she saw him again. The victim later met with a Georgia Bureau of Investigation sketch artist, who made a sketch from her description.

Approximately one month later, on August 23, 2003, the victim was leaving the same MARTA station when she saw Sims and instantly recognized him as her assailant. Sims apparently did not

recognize the victim and asked her for change. When he did so, the victim also recognized his voice. The victim called MARTA police. The officer who responded to the victim's call on August 23 could not immediately find the man the victim had described, but he eventually observed a man fitting the description the victim had given. The officer led the victim, who was still at the train station, to a place where they could observe the suspect, and the victim identified Sims, saying "that's him." "As soon as she saw" Sims, the victim "broke down in tears" and "started shaking." The officer asked the victim "about three times" whether she was certain of her identification, and "[s]he said yes every time." The MARTA police officer arrested Sims at the station and turned him over to Atlanta police officers.

At trial, the sketch was authenticated and introduced into evidence. The victim positively identified Sims as the man who robbed her, raped her, and threatened her with a gun. The MARTA officer pointed out Sims as the man the victim had identified at the train station. A tape of the victim's 911 call was introduced into evidence and played for the jury. The State also introduced as a similar transaction the testimony of another woman who had been approached from behind and threatened with a gun at approximately the same location near the same MARTA station in July 2003.

An Atlanta police investigator assigned to this case testified that while circulating the police artist's sketch in a park near the MARTA station, he encountered a man who resembled the sketch. When the officer told the man he resembled the sketch and asked if he could talk with him, the man fled. The investigator testified that the man arrested on August 23, 2003 was the same man he saw at the park, and at trial he identified that man as Sims.

1. Sims contends the trial court erred in denying his motion for a directed verdict of acquittal because the evidence presented by the State was insufficient to support the jury's verdict. He argues that the evidence was "so contradictory and inconsistent" that it could not have shown that Sims was the perpetrator of the crimes. He points to the victim's acknowledgment that the light was poor and it was hard for her to see "details," and to the fact that medical examination of the victim after the incident did not produce evidence of forcible rape. We do not agree.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence." *Walker v. State*, 267 Ga. App. 155 (1) (598 SE2d 875) (2004). The credibility of witnesses, including the victim, and the weight to be given to their testimony, are matters within the province of the trier of fact. *McIntosh v. State*, 247 Ga. App. 640, 641 (1) (545 SE2d 61) (2001). This court cannot substitute its judgment for that of the jury; we neither weigh the

evidence nor determine the credibility of witnesses. Our task is simply to ascertain whether the evidence is sufficient to support the jury's verdict under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Nolan v. State*, 255 Ga. App. 63 (1) (564 SE2d 464) (2002). If some competent evidence exists to support each essential element in the State's case, even if contradicted, the jury's verdict must be upheld. *Walker*, supra.

Contrary to Sims's contention, we note that evidence of forcible intercourse was presented. The doctor who examined the victim after the incident testified that she had vaginal abrasions consistent with forcible intercourse. Moreover, in this case, the testimony of the victim alone was sufficient to support the jury's verdict of guilt. She positively identified Sims as the man who kidnapped, robbed, and raped her. Although that would have been sufficient, the State also presented evidence from several police officers corroborating the victim's testimony, from the doctor who performed the rape kit, and from a different victim accosted by Sims and robbed in the same geographical area. This evidence was sufficient to satisfy the test in *Jackson v. Virginia*. See *Walker*, supra.

2. Sims asserts that his motion for a mistrial should have been granted when the State presented testimony from the victim of a similar incident. He argues that the incident involving the other victim was insufficiently similar to have been admitted as a similar transaction because that victim was not raped and he was never charged with a crime in connection with that incident. This enumeration has no merit. It is true that Sims was not charged with a crime as a result of the similar transaction and that the victim in the similar transaction was not raped. But no requirement exists that to be admissible as a similar transaction the defendant must be charged with a crime arising from the similar incident.

A trial court's finding of similarity will not be disturbed unless clearly erroneous. *Oliver v. State*, 276 Ga. 665, 667 (3) (581 SE2d 538) (2003). Here, the trial court did not abuse its discretion in allowing into evidence the similar transaction. "All that is required is that the incidents are sufficiently similar [so] that proof of the earlier event helps prove an element of the later crime." (Citation and punctuation omitted.) *Cain v. State*, 268 Ga. App. 39, 42 (601 SE2d 415) (2004). In this case, the similarities are pronounced. The similar transaction occurred within days of the charged crime in the same area of Atlanta, near the same MARTA station. In each instance, a man walked up behind the victim, told her he had a gun, and demanded her jewelry. In each occurrence, after taking the victim's watch and ring, the man ordered the victim to walk to a secluded area and ordered her to disrobe. Each victim testified that even though the man kept warning her not to look back, she was able to do so and saw him well enough

to identify him. Both women positively identified Sims as the attacker. In the similar transaction, however, when the victim told the man she could not undress and began to cry, the man told her to walk away without looking at him. The incident was more than sufficiently similar to be admitted as a similar transaction.

3. In Sims's final enumeration, he challenges the trial court's ruling that allowed the police artist's composite sketch to go out with the jury over objection. We find no error.

First, we do not agree with Sims that permitting the jury to examine the sketch in the jury room was improper on the ground that the sketch also carried writing implying that crimes were committed against two victims. Along with the composite sketch, the poster contained writing stating that the person in the sketch was "wanted in connection with a rape and a robbery in the Inman Park area. Both victims were young black females." Sims argues that the poster implied that he had been charged with crimes against two different victims, rather than just one. But regardless of whether that is true, the sketch, including the writing, had already been admitted into evidence and published to the jury. The only objection made by the defense at that time was that it had not been drawn or made by the testifying officer who identified it. While the ground alleged on appeal may have been inferred by the trial court from counsel's words, it was never stated clearly. The trial court correctly denied defense counsel's objection on several grounds, including that the sketch, with the writing, had "already been published without objection to the jury."[1]

Further, we do not agree with Sims's characterization of the sketch as a "continuing witness" in the jury room.

> Georgia courts allow litigants to object to a written statement as a "continuing witness" to avoid placing undue emphasis on written testimony. This objection prevents the writing from going out with the jury to be read and reread during its deliberations. Instead, the written testimony is treated like oral testimony that the jury hears only once from a witness.

(Citations and footnotes omitted.) *Flournoy v. State*, 266 Ga. 618, 619 (469 SE2d 195) (1996) (Fletcher, P. J., concurring).

---

[1] The objection on the ground that the writing implied two different victims was never explicitly stated. Defense counsel first objected to the sketch going out with the jury on the grounds that the writing placed Sims's character in issue and that it amounted to a continuing witness. When pressed by the trial court to state his exact objection, defense counsel simply read aloud a portion of the writing included with the sketch. When the trial court read the rest of the writing, defense counsel stated: "That is our objection."

Documents that are prohibited by the "continuing witness rule" from going out with the jury include answers to written interrogatories, written dying declarations, and signed statements of guilt. These documents, which generally contain their makers' assertions of purported truths, are ascribed evidentiary value only to the extent that their makers are credible.

(Citation, punctuation and footnote omitted.) *Sagenich v. State*, 255 Ga. App. 663, 664 (1) (566 SE2d 327) (2002).

The police artist's sketch is not such a document. It may be considered "independent and original evidence, in and of itself," as in *Sagenich*, supra at 665 (2), because the sketch itself was the object used by police officers as a tool leading to Sims's apprehension. Such independent and original evidence is admissible because it "does not depend on the credibility of the maker for its value." (Citation and footnote omitted.) Id.

Alternatively, it could be viewed as demonstrative evidence, which serves "only to illustrate testimony given by the witnesses." (Citation and punctuation omitted.) *James v. State*, 270 Ga. 675, 678 (7) (513 SE2d 207) (1999). The sketch demonstrated the Atlanta police investigator's testimony that he circulated and posted a sketch in the neighborhood where the crime occurred to determine if anyone recognized the suspect. In either case, the composite sketch was not a continuing witness, and the trial court did not err in permitting it to go out with the jury.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED OCTOBER 13, 2005.

*Harold S. Gulliver,* for appellant.
*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney,* for appellee.