A06A0755. HILL v. THE STATE.
(631 SE2d 446)

ELLINGTON, Judge.

A Bulloch County jury found Travis E. Hill guilty of armed robbery, OCGA § 16-8-41 (a), based upon evidence which showed that Hill assisted a minor in robbing a convenience store clerk at gunpoint.[1] Hill appeals from the denial of his motion for new trial, contending the trial court's rulings on three evidentiary issues constituted reversible error. Finding no error, we affirm.

---

[7] See id.

[1] The jury acquitted Hill of false imprisonment, OCGA § 16-5-41 (a).

The relevant evidence at trial showed the following facts. In January 2002, 19-year-old Travis Hill helped his girlfriend's 15-year-old brother, J. P., pawn a video game system. Hill used the money to purchase a handgun from a friend, and he gave the gun to J. P. Hill and J. P. discussed robbing a Time Saver convenience store, and they decided that J. P. would go inside and rob the clerk, since the clerk knew Hill and might recognize him. At approximately 3:40 a.m. on January 7, 2002, Hill drove J. P. to the store and dropped him off nearby. J. P. covered his face with a bandanna and entered the store, where he robbed the clerk at gunpoint. After the robbery, J. P. ran back to Hill's car. Hill drove J. P. home and split the money with him.

A couple of days after the robbery, the store clerk contacted police officers and told them he thought the robber was a boy who often came into the store with Hill, who had been a frequent store customer until the day after the robbery. On January 9, 2002, an officer went to Hill's home and arrested him on an outstanding warrant from an unrelated charge. The officer first interviewed Hill at his home, then interviewed him again when they arrived at the sheriff's department; he also interviewed Hill the next day, after Hill had been arrested for the armed robbery. During the custodial interviews, Hill said that J. P. had committed the robbery, and he showed the interviewing officer where J. P. lived. Hill admitted that he drove J. P. to the store on the night of the robbery, but said that he dropped J. P. off near the store and drove away. Although Hill denied that he had anything to do with the robbery, he admitted that, when he dropped J. P. off, he knew J. P. was going to rob the store and that J. P. had a gun and a bandanna to cover his face. Hill also admitted that, later that morning, he drove near the store and saw J. P. running away, so he picked J. P. up and took him home. In addition to these admissions, Hill told the officer that he had pawned the video game system for J. P. and that he took J. P. to a friend's house to buy the gun.

The officer also interviewed J. P., who admitted that he had committed the armed robbery with Hill's assistance. J. P. testified at trial that Hill helped him pawn the video game system, buy the gun, and plan the robbery. J. P. also testified that Hill drove him to and from the store and split the money with him afterward.

The State indicted Hill and J. P. with armed robbery and false imprisonment, but tried them separately.[2] The jury convicted Hill of armed robbery, while it acquitted Hill of false imprisonment. Following the denial of his motion for new trial, Hill appeals.

1. Hill contends the trial court erred when it refused to allow him to use J. P.'s juvenile record as evidence. Hill argues the evidence was

---

[2] The State moved J. P.'s case to juvenile court prior to trial.

admissible to discredit what he characterizes as the State's attempt to portray J. P. as an innocent "pawn" whom Hill had manipulated and exploited. Although Hill argues on appeal that a witness may be impeached with evidence of prior convictions of crimes involving dishonesty or moral turpitude, he has failed to cite to any authority to support the admission of J. P.'s prior juvenile delinquency adjudications in this case.[3] See *Baynes v. State*, 218 Ga. App. 687, 690-691 (4) (463 SE2d 144) (1995) (generally, an adjudication of delinquency is not a conviction of a crime and may not be used to impeach a witness). Further, Hill has failed to cite to any testimony in the record that supports his characterization of the evidence, nor has he cited to testimony for which his trial counsel could have used J. P.'s juvenile record as impeachment evidence. Accordingly, this alleged error is deemed abandoned. See Court of Appeals Rule 25 (c) (2) (an enumerated error which is not supported by citation to authority may be deemed abandoned).

2. Hill contends the trial court erred when it failed to clearly instruct the jury to ignore the testimony of two police officers about their use of a K-9 unit during the investigation of the armed robbery. The record shows that Hill did not object to the testimony at the time it was offered. At the close of the State's case-in-chief, however, Hill objected to the admission of the testimony, arguing that the State had failed to present sufficient foundation evidence regarding the training of the dogs and the qualifications of their handlers. Hill asked the court to instruct the jury to disregard all of the testimony about the dogs. The court granted the request and instructed the jury that they were to disregard the testimony and were not to consider it during deliberations. Hill did not object to the court's instructions, nor did he raise any alleged error regarding the evidence or the court's instructions in his motion for new trial. Under the circumstances, this alleged error is waived. See *Braithwaite v. State*, 275 Ga. 884, 889 (10) (572 SE2d 612) (2002) (alleged errors which were not raised at trial are considered waived and will not be considered on appeal).

3. Hill argues that the trial court erred when it failed to exclude statements Hill made during his three custodial interviews. For the following reasons, we disagree.

(a) Hill argues the interviewing officer used the threat of the bad check charges during the first interview to coerce him into giving up his right to remain silent about the armed robbery. He contends that his resulting incriminatory statements were, therefore, involuntary

---

[3] It is undisputed that J. P. had previously been adjudicated delinquent three times and had served ninety days in a detention center following an August 2001 adjudication. In fact, the record shows that Hill's defense counsel cross-examined J. P. about two of the adjudications at trial.

and inadmissible, relying on OCGA § 24-3-50. Assuming without deciding that Hill's custodial statements constituted a "confession" within the meaning of OCGA § 24-3-50,[4] we find the trial court did not err in admitting the statements at trial.

Under OCGA § 24-3-50,

[a] custodial statement is admissible only if it was made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury. To determine whether the [S]tate has proven that a confession was made voluntarily, the trial court must consider the totality of the circumstances. The trial court sits as the factfinder in a *Jackson-Denno*[5] hearing, and its resolution of factual issues will be upheld by the appellate court unless it is clearly erroneous.

(Citations and punctuation omitted.) *Harrison v. State*, 253 Ga. App. 179, 179-180 (1) (558 SE2d 760) (2002) (physical precedent only). See also *Gober v. State*, 264 Ga. 226, 228 (2) (b) (443 SE2d 616) (1994) (the standard for determining the voluntariness and admissibility of a confession is the preponderance of the evidence).

The record shows that, during a *Jackson-Denno* hearing, the officer who interviewed Hill testified that he went to Hill's home on January 9, 2002, two days after the armed robbery, and arrested Hill on outstanding bad check warrants. After advising Hill of his *Miranda*[6] rights, the officer told Hill he was also investigating a recent armed robbery at the Time Saver store. Hill told the officer that he knew who committed the robbery, and he identified J. P. as the robber. Hill offered to take the officer to J. P.'s house, so the officer put Hill in a patrol car and Hill showed the officer where J. P. lived. The officer then transported Hill to the sheriff's department, read Hill his *Miranda* rights again, and conducted another interview, which was audiotaped. After that interview, the officer released Hill after Hill agreed to pay off the bad checks that were the basis of the arrest warrant. Based upon information gained during the ongoing investigation of the armed robbery, however, police officers arrested Hill the next day for the armed robbery and brought him back to the sheriff's department. The officer who had conducted the previous interviews met with Hill and advised him that he was still entitled to

---

[4] See *Jewett v. State*, 264 Ga. App. 571, 572 (1) (591 SE2d 459) (2003) (a defendant's incriminatory statement that falls short of a confession is a statement against interest, to which OCGA § 24-3-50 does not apply).

[5] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[6] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

the same *Miranda* rights as had been explained the previous day. Hill said that he understood his rights and was willing to talk to the officer.

Following the *Jackson-Denno* hearing, defense counsel asked the court to prohibit the State from mentioning the arrest warrants for the bad check charges, and the court did so. Counsel also objected to Hill's custodial statements on the basis that they were not voluntary. The trial court ruled that the preponderance of the evidence showed that Hill was advised of his *Miranda* rights, that he understood them, and that he freely and voluntarily gave his statements during the three interviews.

We find that, based upon the totality of the circumstances, the trial court's conclusion that Hill gave his custodial statements freely and voluntarily was not clearly erroneous. *Harrison v. State*, 253 Ga. App. at 180 (1).

(b) Hill also contends that the State failed to show that the arresting police officers had a valid warrant when they arrested him on the bad check charges, so that the two custodial interviews conducted that day were illegal. Hill failed to raise this argument at trial or in his motion for new trial, however, so it is waived. See *Braithwaite v. State*, 275 Ga. at 889 (10).

(c) Hill argues that, during the first interview, the officer failed to give him a *Miranda* warning that specifically notified him that he was going to be questioned about the armed robbery, instead of just the bad check charges. Therefore, he argues that his admissions about the robbery should have been suppressed as the result of an illegal interrogation. This argument, however, has been rejected by Georgia's courts. The fact that a police officer does not identify the specific subject matter of an interrogation at the beginning of questioning does not render the defendant's ensuing statement inadmissible. *Harris v. State*, 274 Ga. 422, 424 (3) (554 SE2d 458) (2001); *Christenson v. State*, 261 Ga. 80, 85 (3) (402 SE2d 41) (1991). Even pretermitting that the officer in this case somehow misled Hill about the subject matter of his interrogation,

> [o]nce *Miranda* warnings are given and a person in custody gives a statement to police without invoking his right to remain silent and without requesting an attorney, he has in effect waived his rights. Use of trickery and deceit to obtain a confession does not render it inadmissible, so long as the means employed are not calculated to procure an untrue statement.

(Citations and punctuation omitted.) *Harris v. State*, 274 Ga. at 424 (3). Hill has failed to cite to any facts or authority to support his

argument that he was entitled to an additional, separate *Miranda* warning prior to any questioning about the armed robbery. There was no error.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED MAY 15, 2006.

*James K. Kidd*, for appellant.
*Richard A. Mallard, District Attorney*, for appellee.