A06A1998. MIKELL v. THE STATE.
(637 SE2d 142)

BLACKBURN, Presiding Judge.

Following a jury trial, Kenneth Mikell was convicted on one count of enticing a child for indecent purposes[1] and on three counts of child molestation.[2] He appeals his conviction and the denial of his motion for new trial, (i) challenging the sufficiency of the evidence and (ii) arguing that the trial court erred in (a) admitting similar transaction evidence, (b) allowing the State to make improper closing arguments, (c) admitting the testimony of the victim and her younger sister, (d) admitting hearsay testimony, and (e) denying his claims of ineffective assistance of counsel. For the reasons set forth below, we affirm.

1. We first address Mikell's contention that the evidence was insufficient to support his conviction. "On appeal from a criminal

---

[1] OCGA § 16-6-5.
[2] OCGA § 16-6-4.

conviction, the evidence must be construed in a light most favorable to the verdict, and [Mikell] no longer enjoys a presumption of innocence." *Berry v. State.*[3] When evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia.*[4]

So viewed, the record shows that on July 26, 2003, Althea McDonald, her six-year-old daughter N. M., and her five-year-old daughter J. M. were temporarily residing in a rental home when she called the property management company to request that a plumber repair a leaking sink. The management company told Mrs. McDonald that Mikell would be sent to make the repairs. Sometime before noon, Mikell arrived at the residence and was let in the front door by N. M. Mikell walked through the house to the back door to inform Mrs. McDonald, who was gardening in the backyard, that he had arrived. Mrs. McDonald showed Mikell which sink needed repairs, asked him also to inspect the hot water heater, and then returned to her gardening.

However, instead of repairing the sink, Mikell started up the stairs and quietly asked N. M. to follow him. As they reached the second floor landing, Mikell asked N. M. to kiss him, which she did. They continued up the stairs to the third floor, at which point Mikell exposed his genitals to N. M. and asked her to touch them. N. M. complied, and Mikell then asked her to perform oral sex on him. When N. M. refused, Mikell reached his hand under her shorts and began fondling her genitals. Unbeknownst to Mikell, N. M.'s younger sister, J. M., had followed them upstairs and had seen Mikell expose himself. When Mikell began fondling N. M., J. M. started back downstairs, which alerted Mikell to the fact that he had been seen. N. M. and Mikell quickly followed J. M. down the stairs, and as all three reached the first floor, they were met by Mrs. McDonald who had just come back inside after finishing her gardening. Mikell continued quickly toward the front door, and although both daughters were obviously agitated and trying to tell her something, Mrs. McDonald attempted to ask Mikell whether the repairs had been completed. He responded affirmatively and rushed out the front door at the same moment that Mrs. McDonald's daughters informed her that Mikell had exposed himself to them. After Mrs. McDonald calmed them down, both N. M. and J. M. recounted the entire incident. The police were called, and Mikell was later arrested.

---

[3] *Berry v. State*, 274 Ga. App. 831 (1) (619 SE2d 339) (2005).
[4] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

Mikell was indicted on one count of enticing a child for indecent purposes, three counts of child molestation, and one count of aggravated sexual battery. At his jury trial, both N. M. and J. M. testified about the incident, and the consistency of their accounts of what occurred was corroborated by their mother as well as the two investigating police officers. In addition, the State presented evidence of Mikell's South Carolina conviction for committing a lewd act upon a child and evidence of his sexual relationship with a different 12-year-old girl. At the trial's conclusion, Mikell was found guilty on the count of enticing a child for indecent purposes and on the three counts of child molestation and was sentenced to life imprisonment without the possibility of parole pursuant to OCGA § 17-10-7 (c). Subsequently, he was appointed new counsel and filed a motion for new trial, which after a hearing was denied. This appeal followed.

Mikell contends that the evidence was insufficient to support his conviction. We disagree. "A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." OCGA § 16-6-5 (a). "A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a).

In this case, Count 1 of the indictment charged Mikell with enticing N. M. for indecent purposes by luring her upstairs so he could commit child molestation, and Counts 2 through 4 charged him with three separate acts of child molestation for exposing himself to N. M., having her touch his genitals, and asking her to engage in oral sex upon him. Both N. M. and her younger sister, J. M., specifically testified that Mikell committed the acts described in Counts 1 through 4 of the indictment. Given this testimony, as well as the testimony corroborating the girls' accounts of the incident, a rational trier of fact could have found the essential elements of the offenses charged beyond a reasonable doubt. See *Carolina v. State*[5] (evidence that defendant enticed child to his house with the intention to engage in a sexual encounter was sufficient to support conviction of enticing a child for indecent purposes); *Keith v. State*[6] (child molestation conviction was sufficiently supported by evidence that defendant exposed himself to victim); *Duncan v. State*[7] (child molestation conviction was sufficiently supported by evidence that defendant had victim

---

[5] *Carolina v. State*, 276 Ga. App. 298, 301 (1) (a) (623 SE2d 151) (2005).

[6] *Keith v. State*, 279 Ga. App. 819, 821 (2) (632 SE2d 669) (2006).

[7] *Duncan v. State*, 269 Ga. App. 4, 6 (1) (602 SE2d 908) (2004).

place her hand on his genitals); *Hicks v. State*[8] (child molestation conviction was sufficiently supported by evidence that defendant verbally asked victim to "spread her legs"; "act" required by statute may be merely verbal). Accordingly, Mikell's challenge to the sufficiency of the evidence is without merit.

2. Mikell contends that the trial court erred in admitting (a) similar transaction evidence regarding his prior conviction in South Carolina for committing a lewd act upon a child and (b) similar transaction evidence of his sexual relationship with a different 12-year-old girl. Specifically, he argues that the similar acts were too remote in time, that they impermissibly placed his character at issue, that he was never charged with a crime for one of the acts, and that their probative value was outweighed by their prejudicial effect. We disagree.

In order to admit evidence of similar transactions, the State must show an appropriate purpose, sufficient evidence to establish that the defendant committed the similar act, and a sufficient connection between the similar act and the crime charged. *Lewis v. State*.[9] "Appropriate purposes include showing motive, plan, scheme, bent of mind, and course of conduct." *Cook v. State*.[10] "[I]n cases of sexual abuse of children, evidence of prior sexual acts performed on other children is admissible to show the lustful disposition of the defendant toward children, and, because there is seldom a competent witness other than the victim to what occurred, to corroborate testimony of the victim as to the acts charged." *Lewis*, supra, 275 Ga. App. at 42-43 (2) (a). The trial court's decision to admit similar transaction evidence will not be disturbed absent an abuse of discretion. Id. at 42 (2).

Prior to trial, the State filed the requisite notice of intent to introduce the similar transaction evidence of Mikell's thirteen-year-old conviction in South Carolina for committing a lewd act upon then eight-year-old T. Y. and of his sexual relationship with then twelve-year-old A. S. After a hearing, in which the State argued that evidence was appropriate to show Mikell's bent of mind and lustful disposition toward young girls, the trial court ruled that the evidence was admissible. At trial, T. Y. testified that approximately 13 years earlier Mikell was living with a family friend with whom T. Y. and her family would also occasionally stay. Early one morning, a naked Mikell crawled into T. Y.'s bed and attempted to force intercourse with her but left when he realized that his fiancée was awake in a nearby room. T. Y. informed her parents of the incident that same day, and further

---

[8] *Hicks v. State*, 254 Ga. App. 814, 816 (2) (563 SE2d 897) (2002).
[9] *Lewis v. State*, 275 Ga. App. 41, 42 (2) (a) (619 SE2d 699) (2005).
[10] *Cook v. State*, 276 Ga. App. 803, 809 (6) (625 SE2d 83) (2005).

informed them that on an earlier occasion Mikell had fondled her privates. Mikell eventually pled guilty to committing a lewd act upon a child.

At trial, the State also called A. S. as a hostile witness. She testified that nearly ten years earlier Mikell was in a relationship with her mother. That relationship ended after A. S.'s mother discovered that Mikell had been convicted of committing a lewd act upon T. Y. However, A. S. continued to see Mikell, and, in 1997, at the age of 15, gave birth to a child fathered by Mikell. Additionally, A. S.'s mother testified that A. S. had previously told her that she and Mikell had been having a sexual relationship since she was 12 years old.

Mikell argues that the similar acts were inadmissible because they were too remote. However, "[w]here, as here, the similar transaction evidence is otherwise admissible, a time lapse such as this goes to the weight and credibility of the evidence and does not demand its exclusion." *Hogan v. State.*[11] See also *Sewell v. State.*[12] Moreover, Mikell's contention that his sexual relationship with then 12-year-old A. S. was inadmissible because he was never charged with any crime is without merit. "[N]o requirement exists that to be admissible as a similar transaction the defendant must be charged with a crime arising from the similar incident." *Sims v. State.*[13] Evidence supports the trial court's findings that Mikell's earlier lewd act upon T. Y. and his relationship with A. S. were sufficiently similar to the acts for which he was charged here and were appropriate for showing his lustful disposition and bent of mind toward molesting young girls. See *Cook*, supra, 276 Ga. App. at 810 (6); *Lewis*, supra, 275 Ga. App. at 43 (2) (a). Accordingly, the trial court did not abuse its discretion in admitting the similar transactions into evidence.

3. Mikell contends that his conviction should be reversed because the trial court erred in allowing the State to improperly place his character at issue and to improperly argue future dangerousness during closing argument. "As a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion." (Punctuation omitted.) *Young v. State.*[14] "What is not permitted, however, is the injection into the argument of extrinsic, prejudicial matters that have no basis in the evidence." *Navarro v. State.*[15]

During closing argument, the prosecutor for the State argued: "So we've proven three things beyond a reasonable doubt exactly like

[11] *Hogan v. State*, 272 Ga. App. 19, 22 (1) (611 SE2d 689) (2005).
[12] *Sewell v. State*, 244 Ga. App. 449, 453 (3) (536 SE2d 173) (2000).
[13] *Sims v. State*, 275 Ga. App. 836, 838 (2) (621 SE2d 869) (2005).
[14] *Young v. State*, 272 Ga. App. 304, 312 (4) (e) (612 SE2d 118) (2005).
[15] *Navarro v. State*, 279 Ga. App. 311, 313 (2) (630 SE2d 893) (2006).

I said we would prove to you in the opening statement. We proved to you beyond a reasonable doubt that he molested [N. M.] exactly as we've alleged in the indictment. . . . And thirdly, we proved that he's a liar and that he'll lie to protect himself." After Mikell's counsel closed, the prosecutor for the State offered his rebuttal and stated:

> You know what's scary. What's scarier is what's going to happen if you let him go. If you have a reasonable doubt in this case, then that's what you need to do. That's your sworn oath. If you have a reasonable doubt, then you let this man go. But if you have a reasonable doubt in this case, then this jury will never convict a child molester in the history of the world. If you release this man you are releasing a sexual predator. This man is a convicted child molester, and we have proven beyond a doubt that he struck again. And I need your help to go back to that jury deliberation room and put an end to this man's predation on children, and that's what I'm asking you to do. I'm asking you to find him guilty on every single count of this indictment.

(a) Mikell, however, did not object to this argument, nor did he ask for curative instructions or move for a mistrial; therefore, he has waived any objection that might have been raised. See *Wyatt v. State*.[16]

(b) Moreover, even if Mikell had objected, the State's closing argument did not impermissibly place his character at issue. As discussed in Division 2, supra, Mikell's previous conviction for committing a lewd act upon a child and his past sexual relationship with another young girl were properly admitted into evidence as similar transactions. Thus, the State prosecutor's arguments characterizing Mikell as a child molester and as dishonest were permissible as either references to Mikell's past conduct or inferences drawn from the evidence. See *Navarro*, supra, 279 Ga. App. at 314 (2) (a); *Wyatt*, supra, 267 Ga. at 864 (2) (a).

(c) Mikell further contends that the prosecutor argued future dangerousness when he made statements such as "What's scarier is what's going to happen if you let him go" and "If you release this man you are releasing a sexual predator." Pretermitting the issue of waiver, we agree. "It is manifestly improper for a prosecutor to argue to the jury during the guilt-innocence phase of any criminal trial that if found not guilty, a defendant poses a threat of future dangerousness." *Wyatt*, supra, 267 Ga. at 864 (2) (b). Here, the State prosecutor's

---

[16] *Wyatt v. State*, 267 Ga. 860, 864 (2) (a) (485 SE2d 470) (1997).

statements clearly raised the issue of future dangerousness and were improper. However, we determine that these statements did not constitute reversible error. Given the overwhelming evidence of Mikell's guilt, which included the victim's testimony and the testimony of her younger sister who witnessed the incident, it is highly unlikely that this single portion of the prosecutor's closing argument contributed to the guilty verdict. See id. at 865 (2) (b); *Kirk v. State*.[17]

4. (a) Mikell contends that the trial court erred by allowing the victim's and her sister's out-of-court statements into evidence via their mother's hearsay testimony, arguing that the statements were unreliable and appeared coached. However, Mikell did not object to the mother's testimony, and therefore has waived any right to appellate review of this contention. *Berman v. State*.[18]

(b) Even if Mikell had objected to the mother's testimony regarding N. M.'s out-of-court statements, the objection would have been without merit. Under OCGA § 24-3-16,

[a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

"The trial court need not make an express finding that the circumstances of the statement at issue provide sufficient indicia of reliability before admitting the statement, as this statutory requirement is met if after both parties have rested, the record contains evidence which would support such a finding." (Punctuation omitted.) *Frazier v. State*.[19] Here, N. M.'s out-of-court statements were made under circumstances that provided sufficient indicia of reliability in that they were made immediately after the incident and remained consistent. See id. Furthermore, N. M. testified at trial and was cross-examined by Mikell's trial counsel. Thus, even if Mikell had objected, the trial court would not have erred in admitting the mother's testimony regarding N. M.'s out-of-court statements. See id.

(c) An objection to the mother's testimony regarding J. M.'s out-of-court statements would also have been without merit. OCGA

[17] *Kirk v. State*, 271 Ga. App. 640, 645 (2) (610 SE2d 604) (2005).
[18] *Berman v. State*, 279 Ga. App. 867, 869 (2) (632 SE2d 757) (2006).
[19] *Frazier v. State*, 278 Ga. App. 685, 688 (1) (b) (629 SE2d 568) (2006).

§ 24-3-3 provides that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." "The determination of admissibility under the res gestae exception rests within the sound discretion of the trial court, and this Court will not disturb that determination unless it is clearly erroneous." *Sweney v. State.*[20] Here, J. M.'s statements to her mother were made almost immediately after Mikell molested her older sister and thus were made without premeditation or afterthought. In addition, J. M. also testified at trial and was cross-examined by Mikell's trial counsel. Accordingly, the trial court would not have erred by allowing J. M.'s out-of-court statements into evidence over objection. See *Drummond v. State;*[21] *Sweney,* supra, 265 Ga. App. at 22 (1).

5. Mikell also contends that the trial court erred in admitting improper hearsay via the investigating officer's testimony. At trial, the investigating officer testified that on the day of the incident, after interviewing the victim, her sister, and her mother, he went to the property management company in charge of managing the rental house in order to verify the identity of the plumber who was accused of molesting N. M. At the management company's offices, the officer was given a note handwritten by Laurie Parker, the property manager, indicating that Mikell was the plumber who had been sent to make repairs at the victim's house that day. Ms. Parker did not testify at trial, and although Mikell's trial counsel did not initially object to the officer's discussion of the note's content, he later objected when the State attempted to tender the note into evidence. This objection was sustained.

Pretermitting the question as to whether Mikell waived any objection to the officer's testimony regarding the note's content, the note was hearsay to the extent it was intended to show that Mikell was present at the victim's house on the day she was molested. See *Massey v. State.*[22] "However, the admission of hearsay is harmless when it is cumulative of admissible evidence showing the same fact." *Wiggins v. State.*[23] Here, although the note's author did not testify, another employee of the property management company testified that she specifically recalled Mikell being sent by the company to perform plumbing repairs at the victim's house on the day of the incident. In addition, the victim's mother quite clearly testified as to Mikell's presence in her house on the day in question. Given this

[20] *Sweney v. State,* 265 Ga. App. 21, 22 (1) (593 SE2d 12) (2004).
[21] *Drummond v. State,* 275 Ga. App. 86, 88 (2) (619 SE2d 784) (2005).
[22] *Massey v. State,* 269 Ga. App. 152, 154 (2) (603 SE2d 431) (2004).
[23] *Wiggins v. State,* 280 Ga. 627, 630 (2) (b) (632 SE2d 80) (2006).

admissible evidence placing Mikell at the scene of the crime, the officer's testimony regarding the property manager's note was cumulative and thus harmless. See id.; *Leaptrot v. State*.[24] Accordingly, the admission of the officer's testimony was not reversible error.

6. In his final enumeration of error, Mikell contends that the trial court erred in denying his motion for new trial based on what he alleged to be numerous instances of ineffective assistance of counsel. Specifically, Mikell argues that his trial counsel was ineffective in (a) failing to sufficiently investigate and understand the facts and law upon which the charges were based; (b) failing to adequately meet and review discovery with him; (c) failing to object to the investigating officer's hearsay testimony or request curative instructions regarding that hearsay; (d) failing to object to hearsay consisting of the property manager's note; and (e) failing to object or move for a mistrial based on the State's improper opening and closing statements.

To establish ineffective assistance of counsel under *Strickland v. Washington*,[25] "a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency." (Punctuation omitted.) *Davenport v. State*.[26] See also *Mency v. State*.[27] "A court need not determine whether trial counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiency." (Punctuation omitted.) *Frazier*, supra, 278 Ga. App. at 690 (3). We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous. *Rose v. State*.[28]

(a) Mikell first argues that his trial counsel failed to sufficiently investigate or attempt to understand the facts and law upon which the various charges were based. However, at the hearing on his motion for new trial, Mikell's trial counsel testified that he had previously handled at least ten child molestation cases, three of which were jury trials, and further testified that he adequately understood the law and facts relevant to this case. Given this testimony, as well as Mikell's failure to point to any specific evidence in the record demonstrating that his trial counsel was unprepared or did

---

[24] *Leaptrot v. State*, 272 Ga. App. 587, 599-600 (3) (c) (612 SE2d 887) (2005).

[25] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[26] *Davenport v. State*, 278 Ga. App. 16, 19 (2) (628 SE2d 120) (2006).

[27] *Mency v. State*, 228 Ga. App. 640, 642 (2) (492 SE2d 692) (1997).

[28] *Rose v. State*, 258 Ga. App. 232, 234-235 (2) (573 SE2d 465) (2002).

not understand his case, Mikell has failed to show that his trial counsel's performance was deficient in this regard. See *Nguyen v. State.*[29]

(b) Mikell contends that his trial counsel failed to meet with him an adequate number of times or review discovery with him, which would have led to an alibi defense. However, Mikell's trial counsel testified that he met with Mikell on several occasions and that he personally reviewed discovery with him. "Contrary to [Mikell's] argument, there exists no magic amount of time which counsel must spend in actual conference with his client." (Punctuation omitted.) *Mitchell v. State.*[30] Furthermore, Mikell's trial counsel testified that he did not present an alibi defense because Mikell only denied molesting the victim and initially never denied his presence at the victim's house. Indeed, trial counsel's recollection of this issue was supported at trial when the officer who interviewed Mikell prior to his arrest testified that Mikell admitted being at the victim's house on the day of the incident. As the trial court is entitled to resolve this factual conflict and credit trial counsel's testimony over that of Mikell, it did not abuse its discretion in finding that Mikell failed to show that his trial counsel's handling of his case was outside the bounds of reasonable professional conduct. See id.; *Fitz v. State.*[31]

(c) Mikell also argues that his trial counsel performed deficiently because he failed to object to or request a curative instruction regarding the investigating officer's hearsay testimony, in which he discussed the property manager's note placing Mikell at the scene of the crime. As discussed in Division 5, supra, this hearsay testimony was cumulative, and therefore Mikell cannot show that there is a reasonable probability that, but for the admission of the officer's testimony, he would not have been found guilty of the charged offenses. See *Wiggins*, supra, 280 Ga. at 630 (2) (b).

(d) Mikell further argues that his trial counsel performed deficiently in failing to object to the property manager's note placing him at the scene of the crime and by failing to request a curative instruction regarding that note. As discussed in Division 6 (c), supra, the investigating officer's testimony regarding the note was cumulative of other testimony and thus harmless. *Wiggins*, supra, 280 Ga. at 630 (2) (b). Moreover, with regard to the note itself, Mikell's trial counsel did in fact object to its admission into evidence, and the trial court sustained the objection. Thus, Mikell has failed to show that his trial

---

[29] *Nguyen v. State*, 279 Ga. App. 129, 133 (5) (a) (630 SE2d 636) (2006).
[30] *Mitchell v. State*, 279 Ga. 158, 160 (2) (611 SE2d 15) (2005).
[31] *Fitz v. State*, 275 Ga. App. 817, 825 (4) (a) (622 SE2d 46) (2005).

counsel's handling of his case was outside the bounds of reasonable professional conduct. See *Mitchell*, supra, 279 Ga. at 160 (2).

(e) Finally, Mikell argues that his trial counsel was ineffective by failing to object or move for a mistrial based on the State's improper opening and closing statements. However, Mikell has failed to cite to any part of the record or to any authority in support of his contention that the State's opening was improper and thus has abandoned this argument. See *Hill v. State*.[32] Furthermore, as discussed in Division 3, supra, although during the State's closing argument the prosecutor did impermissibly raise the issue of future dangerousness, given the overwhelming evidence of Mikell's guilt, it is highly unlikely that the improper arguments contributed to the guilty verdict. See *Wyatt*, supra, 267 Ga. at 864 (2) (b). Accordingly, the trial court did not clearly err in denying Mikell's motion for new trial.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED OCTOBER 4, 2006.

*Martin G. Hilliard*, for appellant.
*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Assistant District Attorney*, for appellee.

