A00A1510. ADAMS v. METROPOLITAN ATLANTA RAPID
TRANSIT AUTHORITY et al.
(542 SE2d 130)

PHIPPS, Judge.

Mary Gordon Adams sued the Metropolitan Atlanta Rapid Transit Authority (MARTA) and its employee, Richard James, for injuries she sustained as a passenger on a bus driven by James. She appeals the jury verdict in favor of MARTA and James, the judgment entered on the verdict and the denial of her motion for new trial. Adams claims that the trial court erred by refusing to give three jury charges she requested, by improperly charging the jury on the law pertaining to the duty a carrier owes to its passengers and by not admitting certain medical records. We find no error with respect to the trial court's failure to give the requested charges or with the exclusion of the medical records. We do find that the trial court gave an incomplete instruction about the duty a carrier owes to its passengers, but find that it did not deprive Adams of a fair trial. As a result, we affirm.

On December 13, 1996, Adams boarded a MARTA bus at the North Avenue station. Adams was 76 years old and worked full time. She sat down at the front of the bus, but moved at the next stop because the cold air from the door was bothering her. Adams testified that she told James she was moving to the back of the bus and that as she was attempting to sit down, he "stepped on the accelerator and took off," the bus jerked and she fell. She went to the doctor two days later. Although none of her treating physicians testified, Adams testified that she sustained a concussion and experienced pain in her lower back as a result of the fall, that she received treatment from a chiropractor for a year and that she was unable to return to work after the fall.

James testified that he never heard Adams tell him that she was changing seats and that, if he had, he would have pulled over if necessary. According to James, the incident occurred when a car darted in front of him and caused him to apply the brakes. When he looked back, he saw that someone was on the floor and pulled over on the side of the road. He went to the back of the bus, saw that Adams had fallen and helped her into a seat. James asked Adams a couple of times if she was okay, and she said that she was, but also said that she was feeling a little dizzy. As she got off the bus at her house, Adams told James that her neck was hurting.

1. During the charge conference, Adams's counsel asked the judge if she needed to place on the record her objections to his failure to give her Request to Charge Nos. 7, 9, 10 and 11. The judge told her that she should, but Adams's counsel never made a specific objection or stated the grounds for her objection. Pursuant to OCGA § 5-5-24

(a), in civil cases, "no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection." An objection that merely lists the charge not given is insufficient to preserve the error for review.[1]

OCGA § 5-5-24 (c), however, provides that we must "consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law," regardless of whether a proper objection was made. Adams contends that the trial court's failure to give her Request to Charge Nos. 7, 10 and 11 was harmful as a matter of law.

(a) The trial court gave Adams's Request to Charge No. 6, charging the jury that a "carrier of passengers must exercise extraordinary diligence to protect the lives and persons of his passengers but is not liable for injuries to them after having used such diligence."[2] Adams complains of the trial court's failure to include the definition of "extraordinary diligence" contained in her Request to Charge Nos. 7 and 11. She contends that the court should have charged that extraordinary diligence due to passengers "is that extreme care and caution which very prudent and thoughtful persons exercise under the same or similar circumstances."[3]

OCGA § 5-5-24 (c) must be strictly construed to prevent emasculation of subsection (a) and applies only in rare instances.[4] "To constitute harmful error within the meaning of this subsection, an erroneous charge or failure to charge must result in a gross injustice, such as to raise a question as to whether the appellant has been deprived of a fair trial."[5]

The trial court correctly instructed the jury that MARTA was under a duty to exercise extraordinary diligence to protect its passengers. We must decide if, under the facts of this case, the court's failure to define the term "extraordinary diligence" resulted in such a gross injustice as to raise a question of whether Adams was deprived of a fair trial.

> The rule is that when the charge embraces a section of the Code which contains technical words or expressions, the meaning of which is probably not understood by a person unlearned in the law, the court should so define them as to

---

[1] *Mays v. Farah U.S.A.*, 236 Ga. App. 1, 2 (2) (510 SE2d 868) (1999).
[2] OCGA § 46-9-132.
[3] OCGA § 51-1-3.
[4] *Moore v. Sinclair*, 196 Ga. App. 667, 672 (6) (396 SE2d 557) (1990).
[5] (Citations and punctuation omitted.) Id.

convey to the jury a correct idea of their meaning, but it is unnecessary for the court, even upon request, to explain words and expressions which are of ordinary understanding and self-explanatory.[6]

Applying this rule, Georgia courts have found no error in failing to define such terms as "reasonable doubt,"[7] "corroboration,"[8] "accident,"[9] "spirituous liquors,"[10] "possession,"[11] and "maliciously."[12]

Although it would be preferable to define the term "extraordinary diligence," the term is comprised of words of ordinary understanding and is self-explanatory. Thus, we find no harmful error within the meaning of OCGA § 5-5-24 (c) in the trial court's failure to define this term.

(b) Adams complains that the trial court incorrectly charged the jury on "presumption" by failing to give her Request to Charge No. 10, that

> once it is shown that a passenger was injured, a presumption arises that MARTA was negligent, and the plaintiff is entitled to recover all of the damages which were proximately caused by such negligence. This presumption may be rebutted by showing that MARTA was at all times in the exercise of extraordinary care or by proving any other defense of the defendant.

In 1929, the United States Supreme Court declared unconstitutional a Georgia statute that created a presumption of negligence against a railroad when injuries were caused by operation of the railroad, which presumption could be rebutted only if the railroad proved that it had exercised reasonable care.[13] In response to that decision, the General Assembly of 1929 adopted OCGA § 46-8-292 (formerly Code Ann. § 94-1108), making proof of injury prima facie evidence of the lack of reasonable skill and care on the part of the servants of the railroad company.[14] They also enacted OCGA § 46-7-39 (formerly Code Ann. § 68-710), which applied the same burden-shifting standard to buses for hire. In 1992, Chapter 7 of Title 46 of the Official Code of Georgia Annotated was amended, "so as to repeal

---

[6] *Floyd v. State*, 58 Ga. App. 867, 871 (1, 2) (200 SE 207) (1938).
[7] Id. at (2).
[8] *McCallister v. Doe*, 181 Ga. App. 602, 603-604 (1) (353 SE2d 89) (1987).
[9] *Kelly v. State*, 63 Ga. App. 231, 239 (7) (10 SE2d 417) (1940).
[10] *Slater v. Dodd*, 108 Ga. App. 879 (2) (134 SE2d 848) (1964).
[11] *Williams v. State*, 129 Ga. App. 103, 106 (5) (198 SE2d 683) (1973).
[12] *Gaddis v. State*, 176 Ga. App. 526 (336 SE2d 587) (1985).
[13] *Western & Atlantic R. v. Henderson*, 279 U. S. 639 (49 SC 445, 73 LE 884) (1929).
[14] *Tennessee, Ala. &c. R. Co. v. Andrews*, 117 Ga. App. 164, 166 (159 SE2d 460) (1968).

the presumption in civil actions that certain common carriers are negligent from the mere showing that injury was inflicted by their vehicles."[15] As a result, OCGA § 46-7-39 was repealed.[16]

In summary, the legal presumption of negligence against a carrier was codified, found unconstitutional, recodified as a burden-shifting standard and, as to buses for hire, subsequently repealed.[17] The presumption of negligence is therefore no longer valid. As a result, the trial court did not err in failing to give Adams's Request to Charge No. 10.

2. Adams contends that the trial court improperly instructed the jury that a bus driver is not required to wait until a passenger has reached a seat or to wait until a passenger has had a reasonable time to reach a seat before starting the bus. Adams's counsel objected to the giving of this charge, arguing that the exercise of extraordinary care may require a bus driver to wait until a passenger is seated in certain circumstances, such as when the passenger is elderly or handicapped.

The trial court's charge was taken from a statement in *Ga. Power Co. v. Watts*[18] to the effect that although a railroad is bound not to start the train until a passenger has had a reasonable time to reach her seat, such is not the law with respect to street cars. The law with respect to street cars, as set forth in *Watts*, is that the plaintiff must show that there was a sudden, violent, unusual and unnecessary jerk of the car.[19] We assume, for the purposes of this case, that these rules of law taken from *Watts* apply to buses.

Although Adams's counsel objected to the charge given, she did not request that the court complete the charge by explaining the plaintiff's burden of proof as set forth in *Watts*. We must decide if the court's failure to give a complete statement of the law resulted in such a gross injustice as to raise a question of whether Adams was deprived of a fair trial.

We find that it did not. Adams failed to present evidence sufficient to show that the jerk of the bus was "unnecessary at the particular time and place."[20] Because she failed to meet her burden of proof, the jury would have been authorized to enter a verdict in favor of MARTA and James even with the complete charge.

3. Adams complains of the trial court's refusal to admit her

---

[15] Ga. L. 1992, p. 1179, § 1.
[16] Id.
[17] See *Darlington Corp. v. Finch*, 113 Ga. App. 825, 828 (149 SE2d 861) (1966); see also *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456, 459 (475 SE2d 188) (1996) (Beasley, C. J., dissenting).
[18] 56 Ga. App. 322, 323 (192 SE 493) (1937).
[19] Id. at 322.
[20] Id.

Exhibit 5, comprised of medical records related to treatment she received from Grady Memorial Hospital. She claims that the records were relevant to show that her lower back injuries were sustained as the result of her fall on the MARTA bus. In its ruling, the trial court found that the records were a "mishmash," included information about her diabetes, blood and glucose tolerance and records from an eye clinic and had not been redacted to exclude information not related to her lower back pain.

Adams argues that the records were admissible under OCGA § 24-7-8 because they were certified copies. She confuses authenticity with admissibility.

> Where hospital records are properly certified, the effect of such certification is to dispense with preliminary proof of authenticity on the part of the custodian of the records, but not to make admissible any matter contained in the reports which is otherwise subject to objection.[21]

Thus, objection to admission of the medical records on a basis other than authenticity would not be cured by the fact that they were certified.

Adams correctly notes that records containing diagnostic opinions, conclusions and statements of third parties are not admissible if tendered in total, but that relevant portions not subject to such defects may be admissible.[22] Adams, however, tendered all of the medical records as one exhibit and failed to redact or remove those portions that clearly were not relevant to any injuries sustained as a result of her fall or those portions objected to as hearsay.[23] The trial court did not abuse its discretion by rejecting the exhibit in its entirety.[24]

Adams also claims that the documents should have been admitted because MARTA made only a general objection to the exhibit as a whole. In fact, MARTA's counsel made specific objections to the records before the court ruled the exhibit inadmissible. This argument is without merit.

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

---

[21] (Citations and punctuation omitted.) *Smith v. State*, 141 Ga. App. 720, 722 (8) (234 SE2d 385) (1977).

[22] *Moody v. State*, 244 Ga. 247, 249 (4) (260 SE2d 11) (1979).

[23] See *Giles v. Taylor*, 166 Ga. App. 563 (1) (305 SE2d 154) (1983) (opinions, statements, evaluations and conclusions in medical records constituted inadmissible hearsay).

[24] *Moore v. Graham*, 221 Ga. App. 616, 617 (472 SE2d 152) (1996).

Decided November 7, 2000.

*McKinney & Salo, Sonja L. Salo*, for appellant.
*Amy B. Meyer, Mary L. Davis*, for appellees.