## A04A1560. GARMON v. THE STATE.

(605 SE2d 606)

SMITH, Chief Judge.

John David Garmon was convicted by a jury of one count of trafficking in methamphetamine and one count of possession of cocaine with intent to distribute. Following the denial of his amended motion for new trial, he appeals, challenging the denial of his motion to suppress, the trial court's jury instructions, and his sentence. We find no error, and we affirm.

Construed in favor of the verdict, the record shows that Sergeant John Thompson, who was employed by the Forsyth County Sheriff's Department, executed a search warrant at Garmon's home and discovered suspected cocaine and methamphetamine in Garmon's bedroom, along with other paraphernalia commonly associated with the sale of drugs. The contraband tested positive for methamphetamine weighing a total of 412.41 grams and cocaine weighing 25.71 grams.

1. (a) Garmon contends that the trial court erroneously denied his motion to suppress the evidence seized in his home. He first argues very generally that issuance of the warrant was not based on probable cause.

> In making a determination as to whether there is probable cause necessary to support the issuance of a warrant, the task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of the person supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found at a particular place. The task of a reviewing court is to determine if there is substantial evidence in the record to support the magistrate's issuance of the warrant.

(Citation omitted.) *Campbell v. State,* 263 Ga. App. 755, 756 (589 SE2d 313) (2003).

The affidavit submitted by Thompson in support of the warrant shows that two confidential informants and a concerned citizen provided him with information concerning Garmon's recent involvement with drug transactions. More importantly, the affidavit shows that within five days of the search warrant application, one of the confidential informants assisted Thompson with a controlled purchase of drugs. As we stated in *Turner v. State*, 247 Ga. App. 775, 779 (4) (544 SE2d 765) (2001), "even if the informant had no known credibility, the controlled buy conducted under the observation of the officer, alone, would have been sufficient to establish probable cause." (Citations and footnote omitted.) Under these circumstances, the magistrate had sufficient information "to establish probable cause." Id. The record supports the issuance of the warrant, and the trial court did not err in denying Garmon's motion to suppress on this ground.

(b) Relying on *Vaughn v. State*, 141 Ga. App. 453 (233 SE2d 848) (1977), Garmon argues that the search warrant "lacked probable cause because the warrant itself does not describe the place to be searched with particularity." He points out that the names of the county and state appear in the heading of the warrant, but that no city, county, or state is listed in the body of the warrant. In *Vaughn*, the trial court's denial of the defendant's motion to suppress was reversed. This court noted that "[n]o designation" appeared in the search warrant "as to any city, county or state as to the location of" the property to be searched. Id. at 454. We concluded that the warrant's description of the property to be searched was insufficient "to allow a prudent officer to locate the place definitely and with reasonable certainty." Id. Evidence presented at the hearing on the motion to suppress also showed that three different roads bore the name of one of the roads described in the warrant. Id. at 455. Finally, as we noted in *Miller v. State*, 155 Ga. App. 399, 401 (I) (B) (270 SE2d 822) (1980), in *Vaughn*, "the designation of a county appeared only in the certificate of the officer before whom the warrant was sworn and not the deposition of the affiant."

*Vaughn* is not controlling. The warrant and the affidavit here, both of which were executed by Thompson, designate a particular county in their headings — Forsyth County. See *Cooper v. State*, 212 Ga. App. 34, 35 (441 SE2d 448) (1994). The affidavit describes the premises to be searched as follows:

6650 George CT. Travel north on hwy 306 from hwy 369 3.1 miles to Millwood rd. turn right onto Millwood travel 1.3 miles to George CT. turn right onto George CT. Travel .3 tenths of a mile the residence is the sixth driveway on the right, described as being a light greenish colored double wide

trailer with black shutters.

The description contained in the search warrant is almost identical to that found in the affidavit. In each document, the description shows the starting point to be the intersection of Highway 306 and Highway 369, which, according to the Official Highway and Transportation Map issued by the Georgia Department of Transportation,[1] lies within Forsyth County. In addition, like the executing officer in *Miller*, supra, 155 Ga. App. at 400, in which we distinguished *Vaughn*, supra, Thompson testified at trial that 6650 George Court was located in a particular county, and during the hearing on Garmon's motion to suppress, he testified that the residence was located in Cumming. Finally, unlike the facts of *Vaughn*, no evidence was presented showing any confusion concerning the location of the residence. As in *Miller*, "we conclude that the description in the warrant itself was sufficient to enable the officer who served the warrant to ascertain with reasonable certainty the identity of the place intended. [Cit.]" Id. at 401.

2. Garmon complains of a portion of the trial court's charge. After the court instructed the jury on the law applicable to the case, including the presumption of innocence, reasonable doubt, witness credibility, intent, grave suspicion, and mere presence, the court informed the jury, "[Y]ou have now been instructed on the law that applies to this case and are ready to begin deliberations." The court then made suggestions to assist the jury "in deliberating in an organized and timely fashion" and explicitly stated that the jury was "not required to use these suggestions." Among other things, the court suggested procedures the jurors might choose to use for choosing a foreperson, for discussing and reviewing the evidence, the law, and the instructions, and for voting. The court particularly noted that "no required rules" exist concerning the method of taking a vote.

Garmon argues that these procedural suggestions deviated from the pattern jury instructions, impermissibly lowered the State's burden of proof, and invaded the province of the jury. More particularly, he contends that during this portion of the charge, the trial court improperly told the jurors "to see if each element is established by the evidence (but not beyond a reasonable doubt)." He argues that "[t]his had the effect of lowering the burden of proof necessary for a conviction." To some extent, Garmon mischaracterizes the charge. Among its other suggestions, the court did recommend that the jury "[r]eview the instructions that define each offense and list each

---

[1] This Court can "take judicial notice of the statutorily mandated official state highway map. [Cits.]" *Hendrix v. State*, 242 Ga. App. 678, 679 (1) (530 SE2d 804) (2000).

element, separate element of each offense. Review the evidence, both the exhibits and testimony to see if each element has been established by the evidence." Apparently, Garmon's contention is that the trial court's failure to include the words "beyond a reasonable doubt" rendered the entire charge invalid.

We do not agree with Garmon that the charge deprived him of a fair trial. The first portion of the charge, about which Garmon raises no argument, completely and fairly instructed the jury on the issues it was required to consider, particularly the State's burden of proving Garmon's guilt beyond a reasonable doubt. The court stated as follows:

> This Defendant is presumed to be innocent until proven guilty. The Defendant enters upon the trial of the case with a presumption of innocence in his favor. This presumption remains with the Defendant until it is overcome by the State with evidence which is sufficient to convince you *beyond a reasonable doubt* that the Defendant is guilty of the offenses charged. No person shall be convicted of any crime unless and until each element of the crime is proven *beyond a reasonable doubt.* The burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crimes charged *beyond a reasonable doubt.*

(Emphasis supplied.) The court described the term "reasonable doubt" a short time later, stating:

> A reasonable doubt means just what it says. It is a doubt of a fair-minded, impartial juror honestly seeking the truth. It is a doubt based upon common sense and reason. It does not mean a vague or arbitrary doubt, but is a doubt for which a reason can be given arising from a consideration of the evidence, a lack of evidence, a conflict in the evidence, or any combination of these.

In reviewing a challenge to a jury charge, we examine the charge as a whole to determine whether the trial "court fully and fairly instructed the jury on the law of the case." (Citation and footnote omitted.) *Watkins v. State,* 265 Ga. App. 54 (592 SE2d 868) (2004). So examining the entire charge, it is clear that the trial court repeatedly impressed upon the jury the requirement that it must be convinced of Garmon's guilt beyond a reasonable doubt. The omission of this phrase from the trial court's suggestions, which, as discussed above,

the jurors were free to ignore, in no way negated those consistent admonitions to require proof of guilt beyond a reasonable doubt.

This is not a case such as *Jones v. State*, 252 Ga. App. 332 (556 SE2d 238) (2001), or *Ward v. State*, 271 Ga. 62 (515 SE2d 392) (1999), both of which required reversal because the trial judges misstated the burden of proof. In those cases, the trial courts summarized the State's burden of proof by stating that the respective juries could convict the defendants if they had an "honest belief" that the defendants were guilty. *Ward*, supra at 64; *Jones*, supra at 334 (2). Such summaries, of course, implicitly but clearly lowered the State's burden from proof beyond a reasonable doubt to proof by a preponderance of the evidence. In contrast here, the trial court did not improperly summarize the burden of proof or otherwise confuse the charge. It first clearly and definitively instructed the jury on the correct standard of proof and then made suggestions to the jury as to how it *might* approach its deliberations. Jury instructions need not "track, exactly, the language of pattern jury instructions, so long as the charge is a correct statement of the law and not confusing or misleading." (Citation and footnote omitted.) *Watkins*, supra, 265 Ga. App. at 54 (1). The charge here was neither confusing nor misleading.

Finally, Garmon argues that the trial court erroneously instructed the jury that it must reach a verdict. The Georgia Supreme Court held recently that when giving an *Allen* charge, a trial court should not instruct a jury that a particular case "must be decided" by a jury. *Burchette v. State*, 278 Ga. 1, 2 (596 SE2d 162) (2004). Here, however, the trial court gave no such charge. It did state to the jury, "When you have reached a verdict and your foreperson has signed the verdict, tell the bailiff outside the door of your deliberation room." This was not an admonition or statement to the jury that it *must* reach a verdict, and indeed, the trial court earlier recognized the possibility that the jury might not reach a verdict when it instructed the jurors that no one was required to surrender an opinion "merely for the purpose of reaching a unanimous verdict." The instruction was not error.

3. Garmon argues that the trial court abused its discretion in refusing to consider sentencing him under former OCGA § 16-13-31 (g), now subsection (h). Following a sentencing hearing, the trial court determined that it was required to impose on Garmon a mandatory 25-year prison sentence. Garmon appears to argue that the penalty provisions of OCGA § 16-13-31 are capable of more than one construction, requiring imposition of a shorter sentence. As he points out, one portion of that statute recites in relevant part that a "person who violates any provision of this Code section in regard to trafficking in cocaine . . . or methamphetamine shall be punished by imprisonment for not less than five years nor more than 30 years."

OCGA § 16-13-31 (h). Subsection (e) (3) of this Code section more specifically provides a mandatory minimum term of 25 years, if the quantity of methamphetamine equals or exceeds 400 grams. Like the general sentencing provision discussed in *Steward v. State*, 182 Ga. App. 659 (356 SE2d 890) (1987), subsection (h) is "a general provision and in large part a superfluity. It merely states the range of punishment for the offenses set forth in the preceding subsections." Id. at 661 (3). The trial court was required under the more specific language of OCGA § 16-13-31 (e) (3) to impose a 25-year prison sentence.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 30, 2004.

*Tanyard Oaks, Jeffrey S. Purvis*, for appellant.
*Penny A. Penn, District Attorney, Sandra A. Partridge, Assistant District Attorney*, for appellee.