## A06A1905. OPIO v. THE STATE.
### (642 SE2d 906)

ELLINGTON, Judge.

DeKalb County jurors convicted Tyehimba Opio of two counts of aggravated sodomy, OCGA § 16-6-2 (a) (2); aggravated assault, OCGA § 16-5-21 (a) (2); and kidnapping, OCGA § 16-5-40 (a). Opio appeals from the denial of his motion for new trial, contending that he received ineffective assistance of counsel and that the trial court improperly charged the jury. Finding no error, we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence showed the following relevant facts. The victim testified that she met Opio in December 1999, and he gave her a note with a pager number and the name "Tye." Two days after they met, Opio invited her to his apartment to celebrate his birthday. At the apartment, Opio started making pasta for dinner, and then he and the victim watched television. At some point, Opio went to the kitchen to check on the pasta, but, when he returned, he was holding a handgun. He told the victim to take off her clothes, then started hitting her in the face with the gun. Opio put on a condom and attempted to have intercourse with the victim, but was not able to. Afterward, Opio told the victim to put on her clothes, and he forced her to go outside and into some nearby woods. Opio still had the gun, and he anally sodomized the victim and forced her to commit oral sodomy on him. He then left her in the woods, telling her that if she told anyone what happened, he would kill her.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The victim walked out of the woods and flagged down a car. She told the two men in the car that she had just been raped. They took the victim to a MARTA train station, and one of the men found a MARTA police officer. According to the MARTA officer, a man approached her at the station, pointed out the victim, and told her that he had seen the victim near some apartments and had stopped and offered his assistance. The officer testified that the man told her that the victim had told him that she had been raped at the Oak Tree Apartments. The man asked the officer to assist the victim and notify the police. The officer talked to the victim, who said that she had been raped, but that the two men were not involved in the assault. The officer then thanked the men for helping the victim and told them they could leave; the officer did not get the men's names. According to the officer, the victim was "dazed and confused," was trembling, had dirt on her pants, and had blood on the left side of her face and on her hands. The officer called for an ambulance and contacted the DeKalb County police. The victim told the MARTA officer and the DeKalb County detectives what had happened, described Opio, showed them the note with the name, "Tye," and the pager number, and took the detectives to Opio's apartment. The victim also identified Opio at trial as the man who assaulted her.

After interviewing the victim, the detectives took the victim to the hospital, where she was examined and treated. Two nurses and a physician testified that they observed bruises and a laceration on the victim's face. They also testified that the victim told them she had been sexually assaulted. The physician testified that she did not observe any tears or lacerations around the victim's vagina or anus, but that anal penetration may occur without any lacerations.

The detectives obtained an arrest warrant for Opio and arrested him at his apartment. At the time of his arrest, Opio was wearing clothes that fit the description given by the victim. While in the apartment, the detectives saw cooked pasta in the kitchen, a yellow futon cover that appeared to have bloodstains on it, and shell casings for a .357 weapon, all of which were in plain view. The detectives interviewed Opio after his arrest, and Opio initially denied that he had been at home at the time of the attack, that he knew the victim, and that she had been to his apartment. Opio admitted, however, that his pager number was the same as that on the paper the victim had claimed her attacker, "Tye," had given her. The detectives asked Opio about a scratch mark on his face, and he explained that he had been wrestling with his brother a few days before.

The day after the initial interview, Opio told one of the detectives that he had been under the influence of marijuana during the first interview, he had not told the detective everything, and he "wanted

out" of his earlier statement.[2] According to the detective, Opio admitted that he saw a woman near his apartment on the night of the attack, that she was bleeding, and that he took her into his apartment to clean her up. Opio wiped off the blood with his clothing. After the woman was cleaned up, she left Opio's apartment and he did not see her again. Opio never told the detective before trial that he knew the woman.

At trial, Opio admitted that he had lied during his first custodial interview. Opio's testimony was similar to his second statement to the detective, except that Opio claimed he had met the victim on a "chat line," that she invited herself to his apartment, that she was bleeding when she arrived at his apartment, and that he cleaned her up with the futon cover and some paper towels, as well as his t-shirt.

After Opio's arrest and his first custodial interview, detectives obtained and executed a search warrant for Opio's apartment. During the search, the detectives recovered the futon cover, the handgun shell casings, a bloodstained white t-shirt, and other items, and took photographs of the cooked pasta in the kitchen. A scientist with the Georgia Bureau of Investigation testified that the blood on Opio's futon cover matched the DNA of the victim.

1. Opio contends that he received ineffective assistance of trial counsel, based upon several different allegations of deficient performance by counsel.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to

---

[2] The detective testified that Opio did not appear to be under the influence of alcohol or drugs during the first interview.

ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001).

(a) Opio claims counsel was ineffective for failing to object to the MARTA officer's testimony about the statement the unidentified man made to her at the train station. As shown above, the officer testified that the man had pointed to the victim and said that he had seen her near some apartments, that he had brought her to the station, and that the victim had told him she had been raped. Opio complains that trial counsel should have objected to the testimony because it was hearsay and because the unidentified man did not testify at trial.

During the motion for new trial hearing, however, counsel explained that she did not object because the victim had already testified that she told the men in the car that she had been raped as they took her to the train station, so the substance of the officer's testimony regarding the unidentified man's statement was "already out there" in front of the jury. "[T]he admission of hearsay is harmless when it is cumulative of admissible evidence showing the same fact." (Citation, punctuation and footnote omitted.) *Mikell v. State*, 281 Ga. App. 739, 746 (5) (637 SE2d 142) (2006).

Moreover, there was no dispute at trial that the victim had been sexually assaulted. Trial counsel testified at the motion hearing that "our defense was that [the victim] was raped but just not by Mr. Opio." Opio also acknowledges in his appellate brief that his defense at trial was premised upon his claim that the victim was bleeding from an attack by someone else before she came to his apartment, which was why her blood was on the items recovered from his apartment. The unidentified man did not tell the officer *who* raped the victim, but just that the victim told him she had been raped. Therefore, the man's statement was not inconsistent with Opio's defense, nor did it implicate Opio as the rapist.

Under the circumstances, we conclude that Opio has not shown that counsel's failure to object to the MARTA officer's testimony constituted deficient performance or that there is a reasonable likelihood that the outcome of his trial would have been different if counsel had objected. Therefore, his ineffective assistance claim on this basis must fail. *Robinson v. State*, 277 Ga. at 75-76; *Mikell v. State*, 281 Ga. App. at 748 (6) (c).

(b) Opio claims counsel was ineffective for failing to file a motion to suppress items recovered from his apartment. The record shows that, after DeKalb County detectives arrested Opio and conducted the first interview with him, they obtained a search warrant for his apartment. The search warrant affidavit recounted what the victim had reported to the detectives about the assault and stated that the victim had identified Opio as the rapist from a photograph of Opio

obtained from the apartment complex's security guard. The affidavit did not mention anything the detectives had seen inside the apartment.

At the motion for new trial hearing, trial counsel testified that she did not file a motion to suppress because she believed the search warrant was supported by probable cause. Having reviewed the record, we find that the information obtained from the victim in this case was sufficient to establish probable cause for the search warrant. See *Miller v. State*, 219 Ga. App. 213, 216 (2) (464 SE2d 621) (1995) (affirming the trial court's denial of a motion to suppress, finding that there was probable cause to support a search warrant based upon uncorroborated information from the victim, because "there was no requirement that [the victim's] reliability be further corroborated in order to show that probable cause existed") (citation and punctuation omitted).

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Citation omitted.) *Richardson v. State*, 276 Ga. 548, 553 (3) (580 SE2d 224) (2003). Opio has failed to make such a showing in this case.

(c) Opio contends counsel should have raised a relevancy objection to the detective's testimony about booking photos which showed a scratch on his (Opio's) face. He claims that there was no evidence that the victim scratched Opio during the attacks in the apartment or in the woods.

"Any evidence is relevant which logically tends to prove or to disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant." (Citation and punctuation omitted.) *Crozier v. State*, 263 Ga. 866, 867 (2) (440 SE2d 635) (1994). As counsel explained during the motion for new trial hearing, she did not object to the testimony because Opio "was accused of a violent sexual assault and some kind of struggle. And I don't know that it is irrelevant for the State to offer pictures showing scratches that could be the result of that." Under the circumstances, counsel's decision not to challenge the admissibility of the officer's testimony about the scratch on Opio's face was a reasonable strategic decision. *Parker v. State*, 281 Ga. 490, 493 (3) (b) (640 SE2d 44) (2007). Further, given the overwhelming evidence in this case, even if counsel had successfully moved to exclude the officer's testimony based on relevancy, Opio has not shown a reasonable likelihood that the outcome of the trial would have been different. Id. at 493 (3) (c).

(d) Opio claims counsel should have objected when the trial court allowed a nurse to testify as an expert witness, and should have

objected to the nurse's hearsay testimony and her testimony authenticating the victim's medical records. The nurse was the first person to examine the victim when she arrived at the hospital. For the following reasons, Opio's claims lack merit.

(i) Opio complains that trial counsel should have objected when the State offered the nurse as an expert witness in the field of nursing. The record shows that the nurse had completed four years of nursing school, was a registered nurse and certified by the State of Georgia, had been employed at DeKalb Medical Center for twenty-eight years, and was the hospital's assistant clinical manager. Opio has cited to no authority for his claim that the nurse was unqualified to testify as an expert witness in nursing.

(ii) Opio complains that counsel failed to raise a hearsay objection to the nurse's testimony regarding notes she had recorded in the victim's medical records. The record reflects, however, that counsel raised a hearsay objection to the nurse's testimony and that the objection was overruled. Moreover, the nurse's testimony about what the victim told her during the examination and what the nurse observed regarding the victim's condition was admissible under OCGA § 24-3-4, which allows the admission of hearsay statements made for medical diagnosis or treatment. *Scott v. State*, 281 Ga. App. 106, 109-110 (2) (635 SE2d 582) (2006).

(iii) Opio claims that counsel should have objected to the introduction of the victim's medical records on the basis that they were not properly authenticated because the hospital's records custodian did not testify at trial. It is undisputed that the medical records had been certified by the "Release of Information Coordinator" of the Medical Record Department of DeKalb Medical Center.

Under OCGA § 24-7-8 (b), "[m]edical records or reproductions thereof, when duly certified by their custodians, need not be identified at the trial and may be used in any manner in which records identified at the trial by the custodian could be used." "Where hospital records are properly certified [under OCGA § 24-7-8], the effect of such certification is to dispense with preliminary proof of authenticity on the part of the custodian of the records." (Footnote omitted.) *Adams v. MARTA*, 246 Ga. App. 698, 702 (2) (542 SE2d 130) (2000). Therefore, because the medical records in this case had been properly certified, they needed no further authentication. Id.

Accordingly, the trial court properly rejected Opio's claims that counsel's failure to raise the foregoing objections constituted ineffective assistance.

(e) Opio contends counsel was deficient for failing to object to the testimony of Dr. Tonnu, the physician who examined and treated the victim in the emergency room. Opio argues that Dr. Tonnu's testimony was inadmissible because the physician lacked the requisite

experience to qualify as an expert witness in this case and the State never tendered her as an expert witness. The transcript shows that Dr. Tonnu had been a physician in the emergency room at DeKalb Medical Center since 1994 and had treated three or four rape victims a year.

> An expert witness is anyone who, through training, education, skill, or experience, has particular knowledge that the average juror would not possess concerning questions of science, skill, trade, or the like. An expert witness may render an opinion within his area of expertise after the proper qualifications have been proven to the trial court. If, after qualifying a witness as an expert but without a formal tender, counsel proceeds to ask for expert opinion evidence, the trial court has tacitly or impliedly accepted the witness as an expert.

(Footnotes omitted.) *Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004). See also *McLelland v. State*, 203 Ga. App. 93, 95 (6) (416 SE2d 340) (1992) (a witness' status as a lay or expert witness goes to the credibility of the witness, not the admissibility of the witness' opinion testimony).

Here, Dr. Tonnu testified as to her credentials, and Opio has cited to no authority that would support a ruling that she was not qualified to testify as an expert in this case. Further, the State questioned her as an expert and, thus, the trial court either tacitly or impliedly accepted her as such. Under the circumstances, "any objection raised by [Opio's] counsel to such questioning would have been futile, and therefore cannot serve as the basis for a claim of ineffective assistance." *Fielding v. State*, 278 Ga. at 311 (3).

(f) Opio claims counsel should have objected when, during cross-examination, the prosecutor used the transcript of Opio's first custodial interview to impeach Opio about statements he (Opio) made during the interview which were inconsistent with his trial testimony. The transcript shows, however, that the prosecutor properly impeached Opio by confronting him with his prior inconsistent statements. Under OCGA § 24-9-83, "[a] witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case." Therefore, an objection to the questioning would have been meritless, and counsel's failure to make a meritless objection is not evidence of ineffective assistance. *Hayes v. State*, 262 Ga. 881, 884-885 (3) (c) (426 SE2d 886) (1993).

2. Opio contends the trial court erred in charging the jury on the crime of aggravated assault by placing the victim in reasonable apprehension of receiving a violent injury. Opio complains that the

indictment did not charge him with placing the victim in reasonable apprehension of receiving a violent injury.

The record shows the indictment charged Opio with aggravated assault by committing an assault on the victim with a handgun, a deadly weapon. Under OCGA § 16-5-20 (a), "[a] person commits the offense of simple assault when he or she either: (1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury." Further, under OCGA § 16-5-21 (a) (2), a person commits the offense of aggravated assault when he or she commits an assault "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."

The court gave the jury the following charge:

Now, to define aggravated assault I will need to define assault for you. An assault is an attempt to commit a violent injury to the person of another or an act which places another person in reasonable apprehension of immediately receiving a violent injury. A person commits the offense of aggravated assault when the person assaults another person with a deadly weapon. To constitute such an assault, actual injury to the alleged victim need not be shown. It is only necessary that the evidence show beyond a reasonable doubt that the defendant attempted to cause a violent injury to the alleged victim, or intentionally committed an act that placed the victim in reasonable fear of immediately receiving a violent injury.

The court also charged the jury that the State had to prove the aggravated assault was made with a deadly weapon, as alleged in this case.

Contrary to Opio's argument on appeal, the court's charge was not error. In fact, Opio's argument has specifically been rejected by the Supreme Court, which has held that an indictment charging aggravated assault:

need not . . . specify the manner in which the defendant committed the simple assault, when that is a lesser included offense within the greater offense of aggravated assault. Instead, an indictment for aggravated assault should, as it did in this case, allege the aggravating aspect of the simple assault. This indictment was sufficient to put [Opio] on notice that he could be convicted for aggravated assault if he committed a simple assault in either manner contained in

the simple assault statute, [OCGA § 16-5-20,] so long as the State proved that he did so by use of a gun. The two charged methods of committing simple assault, as an element of aggravated assault, did not provide an improper basis for the jury to convict [Opio] of aggravated assault. The trial court did not charge a separate, unalleged method of committing aggravated assault, but simply defined both methods of committing simple assault, a lesser included offense. Because the jury's charge did not authorize a conviction in a manner other than that alleged in the indictment, the charge was not erroneous.

(Punctuation and footnotes omitted.) *Simpson v. State*, 277 Ga. 356, 358 (3) (589 SE2d 90) (2003).

3. Opio claims the trial court erred in charging the jury on truthfulness. The court instructed the jury as follows: "To weigh the evidence, you must consider the believability of the witness. You will apply the tests of truthfulness, which you apply in your daily lives." Opio argues that the charge constituted reversible error because it lacked "definitiveness" and was "blurred, vague, and confusing." Opio failed to cite to any authority to support a finding that the instruction given herein was error.

"In reviewing a challenge to a jury charge, we examine the charge as a whole to determine whether the trial court fully and fairly instructed the jury on the law of the case." (Citation and punctuation omitted.) *Garmon v. State*, 269 Ga. App. 795, 798 (2) (605 SE2d 606) (2004). In this case, the trial court thoroughly charged the jury on the factors to be considered in judging the credibility of witnesses and their responsibility for resolving conflicts in the evidence. When considered as a whole, the court's charge fully and fairly instructed the jury on the applicable law. There was no error.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED MARCH 7, 2007.

*Dell Jackson*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.