A11A2091. HART v. THE STATE.
(725 SE2d 816)

BARNES, Presiding Judge.

A jury convicted Devor Emanuel Hart of aggravated sodomy and child molestation, and the trial court sentenced him to serve 20 years. On appeal, he argues that the trial court erred in several evidentiary rulings, but for the reasons that follow, we affirm the convictions.

"Following a criminal conviction, we construe the evidence in

---

[35] *In the Interest of G. L. B.*, 301 Ga. App. 619, 620 (688 SE2d 400) (2009) (punctuation omitted).
[36] *Id.* (punctuation omitted).

the light most favorable to the jury's verdict." (Citation omitted.) *Fortune v. State*, 304 Ga. App. 294, 295 (696 SE2d 120) (2010). So viewed, the evidence at trial established that the six-year-old victim and her 12-year-old brother were staying with the 17-year-old Hart and his parents in the summer of 2005 while their mother was in the Army and stationed in Korea. When the mother returned to the States, she, her long-term boyfriend, and her children were at a restaurant when the victim "blurted out" that she did not really like Hart because "he does nasty things to me." When pressed, the child said Hart had "peed on her butt," "tried to get me to suck his . . . thing," and then "took his thing and he put it in my butt. And he put my head in the pillow." The mother testified that Hart's mother never told her that the victim said anything about Hart molesting her, even though the two women spoke almost every day while the mother was in Korea.

The family went to Hart's house and confronted him and his parents, and Hart responded that he "didn't do it," that he was always being blamed for things, and that he did not care if the victim's mother called the police and reported the outcry. The police came to the house and took statements, and after they left, the mother's boyfriend and Hart's father got into a fight. The police returned and remained until the victim and her family cleared out of Hart's house.

The victim's brother testified that he was close to his younger sister, and when she told him that Hart had been "doing nasty stuff to her" he took her straight to Hart's mother and made her repeat her allegations because he thought Hart's mother should know about them. The victim told Hart's mother that Hart "stuck his thing in" her "then he peed on her back." Hart's mother seemed "a little shocked," and told the brother that his mother did not want to hear him talking about it, so he did not tell her when she called from Korea.

The boyfriend of the victim's mother, who had been with her for nine years and was a father figure to the children, had been stationed with the mother in Korea and returned to Atlanta with her, testified about the victim's outcry. The mother had asked the children how things had been while they were with Hart's family, and the brother said he did not like staying there. The victim said she did not like it either because Hart was nasty and did nasty things to her, like made her suck his "thing," peed on her back, and put his "thing" in her butt and her head in the pillow. The boyfriend was livid and confronted Hart, who denied doing anything to the victim. When the boyfriend asked what they were going to do to get to the bottom of this, Hart's mother "shrugged it off." Hart's father was angry about the accusation, got into an altercation with the boyfriend, and began

throwing the family's belongings into the yard. The victim had never accused anyone else of molesting her.

The victim, who was nine at the time of the trial, testified that she first told her brother that Hart was doing nasty things to her, and that her brother immediately told Hart's mother. She testified that Hart took her into his room, told her to get on his bed face-down, then got on the bed himself, but when asked what happened next the victim did not answer. She denied telling anyone that a boy from her school said he was going to put his thing in her mouth, and when asked if she told the truth or a lie about Hart doing nasty things to her, she responded, "Truth."

Two days after the outcry, an expert in forensic interviewing and the process of child molestation disclosure interviewed the victim. After establishing a rapport, the victim told her that Hart put his "thing" in her butt and clarified with an anatomical drawing that by "thing," she meant penis. The expert testified that children who were coached to lie gave little information and expressed events in rote fashion, without details or context. In contrast, the victim here gave conceptual details, and her demeanor, behavior, and disclosure were consistent with that of a child who had been abused.

The victim's former kindergarten teacher testified that in April 2006, Hart's mother came to the school and reported that an older student had said something to the victim about "putting his d-i-c-k in her mouth." The teacher was shocked at the language and asked the mother to step into the hall to discuss the matter. When the teacher sought to identify the boy and suggested they go to the principal's office to report the matter, Hart's mother said she had already told someone and just wanted the teacher to know too.

1. Hart alleges that the evidence against him was insufficient to sustain his convictions. He was indicted for one count of aggravated sodomy by inserting his penis into the anus of a child younger than ten, a second count of aggravated sodomy by inserting his sex organ into the mouth of a child younger than ten, and for child molestation for exposing his penis to a child younger than 16 with the intent to arouse and satisfy his sexual desires. The jury acquitted Hart of the second count, but convicted him on the first and third counts.

OCGA § 16-6-2 (a) (2) defines aggravated sodomy as, among other things, "sodomy with a person who is less than ten years of age." OCGA § 16-6-4 (a) (1) provides that "a person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy [his] sexual desires." The evidence as presented above was sufficient to authorize the jury to find Hart guilty beyond a reasonable doubt of both aggravated sodomy and child molestation. *Jackson v. Virginia*, 443

U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hart contends the trial court erred in allowing the state to refer to one of the witnesses as a victim, rather than as an alleged victim. "[W]hile reference to the alleged victim as 'the victim' may technically imply that a crime has been committed, the common usage of the term 'victim' in connection with criminal prosecutions embodies the concept that the complaining party is allegedly the object of a crime." (Punctuation omitted.) *Gober v. State*, 203 Ga. App. 5, 6 (2) (416 SE2d 292) (1992), overruled in part on other grounds, *Dudley v. State*, 273 Ga. 466, 468 (542 SE2d 99) (2001). Accordingly, we find no error in the trial court's ruling.

3. Hart asserts the trial court erred in denying his hearsay objection to the testimony of the victim's mother about statements the victim's brother made to her. While the mother was testifying about the victim's outcry at the restaurant, she began to testify that the brother "charmed in" [sic] on the conversation and told her he had told Hart's mother about the victim's outcry, but Hart's mother told him not to tell the victim's mother. At that point, Hart objected on hearsay grounds to testimony by the victim's mother about conversations between the brother and Hart's mother, and the trial court sustained the objection. Hart then interposed a second objection to the mother testifying about anything the brother said to her, and the trial court overruled that objection. The State did not ask the victim's mother any more questions about what the brother said to her, but asked her what actions she took after her conversation with the children.

Hart does not argue that any testimony given by the victim's mother about the brother's statements was prejudicial, only that the trial court's failure to sustain the second objection constituted harm, although he does not describe how the ruling itself was harmful absent the introduction of evidence afterward. The State moved on to ask the victim's mother about her actions after her conversation with the children. "It is well established that, to show grounds for reversal, an appellant must establish harm as well as error." *Perdue v. State*, 271 Ga. App. 402, 405 (2) (609 SE2d 756) (2005). Hart cannot establish that he was harmed by the trial court's ruling, and we therefore find this enumeration to be without merit.

4. Finally, Hart contends that the trial court allowed an expert witness to improperly bolster the victim's credibility. While an expert may express an opinion about whether the evidence is consistent with the victim's story, she may not testify that in her opinion the victim was telling the truth. *Hubert v. State*, 297 Ga. App. 71, 78 (c) (i) (676 SE2d 436) (2009). "An expert witness may . . . express an opinion as to whether medical or other objective evidence in the case is consistent with the victim's story." (Citation and punctuation

omitted.) *Harris v. State*, 279 Ga. App. 570, 571 (1) (631 SE2d 772) (2006). In this case, the expert testified that the victim's demeanor, disclosure and behavior was consistent with that of a child "who has been sexually abused," testimony that is permissible under our law. It follows that the trial court did not err in overruling the defense's objection to the testimony.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED MARCH 9, 2012.

*Simon Weinstein*, for appellant.

*Robert D. James, Jr., District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.