**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 28, 2013**

# In the Court of Appeals of Georgia

A12A1905. HAITHCOCK v. THE STATE.                    RA-072C

RAY, Judge.

Following a jury trial, Michael Ray Haithcock was found guilty beyond a reasonable doubt of child molestation.[1] He appeals from his conviction and the denial of his motion for new trial, contending that the trial court erred (1) in denying his motion for directed verdict; (2) in failing to exclude witness testimony about child abuse accommodation syndrome; (3) in allowing a witness to testify despite the State's violation of reciprocal discovery; (4) in commenting on the evidence; (5) in failing to give a jury charge on accident; and (6) in excluding a hospital report from

---

[1] OCGA § 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person: Does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person").

the evidence. Haithcock also contends that he had ineffective assistance of counsel. Finding no error, we affirm.

1. Haithcock contends that he was entitled to a directed verdict of acquittal because the State failed to prove the element of intent beyond a reasonable doubt. We disagree.

> A motion for a directed verdict should be granted only when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law. The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction: the evidence must be sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. The evidence must be viewed in the light most favorable to support the verdict and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine the credibility of witnesses.[2]

Viewed in this light, the evidence shows that Haithcock is the adoptive step-father of the victim, G. H. At trial, G. H. testified that, in several incidents occurring between November of 2006 and October of 2007, Haithcock would come into her

---

[2] (Citation omitted.) *Walker v. State*, 310 Ga. App. 223, 223 (1) (713 SE2d 413) (2011).

bedroom at night and ask her if she wanted to sleep with him. He would then molest her by reaching underneath her clothes, fondling her breasts and vagina, nibbling on her earlobes, and kissing her breasts. Although the molestation began when G. H. was six years old, the incidents at issue here occurred when G. H. was between the ages of eleven and twelve years old.

Although Haithcock acknowledges that G. H. provided detailed testimony of the incidents at trial, he contends that G. H.'s testimony does not reveal that he had any sexual intent and that no other witnesses testified to any inappropriate contact between him and G. H.

> Intent, which is a mental attitude, is commonly detectable only inferentially, and the law accommodates this. While a person is not presumed to act with criminal intention, intent is a question of fact to be determined upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.[3]

Even when a finding by the jury that the accused had the intent to commit the crime charged is supported by evidence which is exceedingly weak, the verdict will

---

[3] (Puncuation and footnotes omitted.) *Parrott v. State*, 318 Ga. App. 545, 552 (3) (736 SE2d 436) (2012).

3

not be set aside on that ground.[4] Furthermore, we have held that the testimony of child molestation victim alone is sufficient to authorize the jury to find that the defendant committed the acts claimed and to infer that the defendant acted with the intent to arouse or satisfy his or her sexual desires.[5]

Here, G. H's testimony provided direct evidence that Haithcock touched her inappropriately, and the jury was entitled to infer from this evidence that Haithcock acted with the intent to arouse or satisfy his own sexual desires. The evidence was sufficient to convict him, and the trial court did not err in denying his motion for a directed verdict.

2. Haithcock contends that the trial court erred in failing to exclude the testimony of Dr. Elizabeth Hudson, a licensed psychologist, regarding child abuse accommodation syndrome. Haithcock argues that such testimony was not relevant and improperly bolstered G. H.'s testimony. We discern no error.

Under Georgia law, it is well-established that "an expert may express an opinion as to whether medical or other objective evidence in the case is consistent

---

[4] Id. at 553 (3).

[5] *Malone v. State*, 277 Ga. App. 694, 696 (1) (627 SE2d 378) (2006); *Ferrell v. State*, 256 Ga. App. 692, 694 (1) (569 SE2d 899) (2002).

with the victim's story."[6] However, an expert may not express an opinion as to whether the victim is telling the truth.[7]

The evidence shows that G. H.'s behavior changed as a result of the molestation. She became more withdrawn, preferring to stay in her bedroom rather than spending time with the rest of the family. She began locking her bedroom door, stuffing towels beneath her door, sleeping with her clothes on, wrapping a towel tightly around her before going to sleep, and asking her siblings to sleep in the room with her.

In this case, Dr. Hudson testified that G. H.'s demeanor, disclosure, and behavior were consistent with that of a child who has been sexually abused, testimony that is permissible under our law.[8] Accordingly, the trial court did not err in allowing Dr. Hudson's testimony.

3. Haithcock contends that the trial court erred in allowing Dr. Hudson to testify despite the State's failure to timely provide him with a copy of Dr. Hudson's

---

[6] (Citation and punctuation omitted.) *Ledford v. State*, 313 Ga. App. 389, 392 (3) (721 SE2d 585) (2011).

[7] *Harris v. State*, 279 Ga. App. 570, 571 (1) (631 SE2d 772) (2006).

[8] *Hart v. State*, 314 Ga. App. 685, 689 (4) (725 SE2d 816) (2012).

report as required by the statute governing reciprocal discovery.[9] However, the record shows that the trial court offered Haithcock a continuance, and after discussing the matter with his counsel, Haithcock chose to proceed with trial. Accordingly, Haithcock has waived his right to assert this as error on appeal.[10]

4. Haithcock contends that the trial court erred by commenting on the evidence in reading G. H.'s letter to the jury. We discern no error.

While G. H. was on the witness stand, Haithcock's counsel moved to tender into evidence a letter that G. H. had written to the newspaper in response to an article it published about Haithcock's arrest. The State did not object to the admission of the letter, but it did object to the letter being sent out with the jury because of the continuing witness rule. As G. H. was upset when she wrote the letter, the letter contained profanity and some "pretty harsh language." Near the end of G. H.'s testimony, the jury was excused from the courtroom, and the trial court addressed the admission of the letter into evidence and the application of the continuing witness

---

[9] OCGA § 17-16-4 (a) (4).

[10] *Thompson v. State*, 262 Ga. App. 17, 21 (4) (585 SE2d 125) (2003) (defendants' failure to request a continuance to cure any prejudice which may have resulted from the State's failure to comply with requirements of reciprocal discovery waived their right to assert error on appeal).

rule with counsel. The trial court gave counsel the option of sending the letter out with the jury during deliberations or having the letter read to the jury and excluding it from the jury room. Counsel for both sides agreed that the court could read the letter to the jury. The trial court indicated that it would read the letter to the jury and then ask G. H. if that was what she wrote. When the jury returned to the courtroom, the trial court read the letter to the jury, and G. H. confirmed the accuracy of the content of her letter.

Haithcock argues that the trial court's reading of the letter violated the rule that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."[11] This argument is misplaced. Although the trial judge's reading of the letter to the jury was highly unorthodox and, in our view, not recommended,[12] it did not constitute an impermissible expression of opinion or a comment on the evidence. G. H. testified that it was an accurate recitation of the content of her letter. We have specifically held that "a correct statement by the court

---

[11] OCGA § 17–8–57.

[12] The record is unclear as to why G. H. or counsel did not read the letter to the jury.

7

as to the testimony of a witness is not error in the absence of special circumstances tending to show such an unwarranted emphasis upon certain testimony as might confuse or prejudice the jurors."[13] Here, the trial court's reading of the letter was a correct statement as to the contents of G. H.'s letter. Under these circumstances, we find no error.[14]

5. Haithcock contends that the trial court committed error when it failed to charge the jury on accident. We disagree.

Haithcock's counsel did not request a jury charge on accident, and he did not preserve any objection to the content of the jury instructions because he did not voice an objection to the charge as given.[15] Nevertheless, pursuant to OCGA § 17–8–58, which is applicable to trials taking place after July 1, 2007, we review for plain error an alleged error in jury instructions properly enumerated and argued on appeal that was not raised by trial counsel before the jury retired to deliberate.[16]

---

[13] (Citation and punctuation omitted.) *Bolden v. State*, 281 Ga. App. 258, 260 (2) (636 SE2d 29) (2006). Accord *Armour v. State*, 315 Ga. App. 745, 748 (2) (728 SE2d 270) (2012).

[14] *Bolden*, supra; *Armour*, supra.

[15] *Guajardo v. State*, 290 Ga. 172, 175 (3) (718 SE2d 292) (2011).

[16] Id. at 175 (4).

The "plain error" test adopted by our Supreme Court in *State v. Kelly*[17] gives the appellate court discretion to reverse a conviction if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity or public reputation of judicial proceedings.[18]

Even if we assume that trial counsel's statement to the trial court that the defense had no objection to the charge as given was not an affirmative waiver,[19] there is no plain error because the evidence did not warrant a charge on accident.

A jury charge on accident is required "only if there is evidence to support a finding that the defendant committed the acts which were the basis of the charge, but without any criminal scheme or undertaking, intention, or criminal negligence."[20] Thus, the evidence must show that Haithcock admits to having committed the acts

---

[17] 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

[18] *Terry v. State*, 291 Ga. 508, 509 (2) (731 SE2d 669) (2012).

[19] *Kelly*, supra at 34 (b), n. 5.

[20] (Citation and punctuation omitted.) *Griffin v. State*, 262 Ga. App. 87, 88 (3) (585 SE2d 145) (2003).

9

that would constitute the crimes for which he was charged, but claims that his acts were done unintentionally.[21]

Haithcock contends that G. H.'s testimony provided the basis for the defense of accident, but he failed to provide any citation to the record to support this argument. Nevertheless, we reviewed the record in its entirety, and the only evidence of unintentional touching occurred in the context of typical family play wholly unrelated to the incidents for which Haithcock was convicted.

Furthermore, Haithcock's primary, if not sole, defense was that no inappropriate touching or kissing occurred and that G. H.'s accusations were prompted or coached by her mother, who had just initiated divorce proceedings against him. He did not admit to committing the alleged acts or claim that he committed these acts unintentionally.

For the above reasons, the trial court did not err in failing to charge on accident.

---

[21] *Haynes v. State*, 281 Ga. App. 81, 82 (2) (b) (635 SE2d 370) (2006); *Maxey v. State*, 272 Ga. App. 800, 802 (1) (613 SE2d 236) (2005) ("In order to assert a statutory affirmative defense, . . . the defendant must admit all of the elements of the crime except intent . . .").

6. Haithcock contends that the trial court erred in refusing to allow the Scottish Rite Hospital records to be admitted into evidence. We discern no error.

Haithcock argues that the records were exculpatory because the results of G.H.'s medical examination contained therein indicated that there was no physical evidence of molestation or intercourse. Although the records were properly authenticated by Scottish Rite Hospital's custodian of records,[22] such authentication does not eliminate the rule against hearsay.[23] Here, Haithcock did not call as a witness the physician or nurse who performed the examination to testify as to their findings. Therefore, the trial court properly excluded the records from the evidence on the basis of hearsay.

Haithcock also argues that the records should have been admitted into evidence because the records were offered for impeachment purposes. However, the record shows that trial counsel was permitted to use the records for this purpose through oral testimony.

---

[22] *Opio v. State*, 283 Ga. App. 894, 899 (1) (d) (iii) (642 SE2d 906) (2007) (duly certified medical records did not need to be authenticated at trial).

[23] *Fuller v. Flash Foods, Inc.*, 298 Ga. App. 217, 220 (2) (679 SE2d 775) (2009).

Accordingly, the trial court did not err in refusing to allow the records to be admitted into evidence.

7. Haithcock contends, for the first time on appeal, that he received ineffective assistance of trial counsel.

> It is axiomatic that a claim of ineffectiveness of trial counsel must be asserted at the earliest practicable moment. The rule that an ineffectiveness claim must be raised at the earliest practicable moment requires that [the] claim be raised before appeal if the opportunity to do so is available. If the claim is not raised at the earliest practicable moment, it is waived.[24]

In this case, appellate counsel filed an amended motion for new trial on behalf of Haithcock, but failed to raise an ineffective assistance of counsel claim. As a result, this claim has been waived.[25]

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[24] (Citation omitted.) *Green v. State*, 301 Ga. App. 866, 869 (2) (689 SE2d 132) (2010). Accord *Thompson v. State*, 257 Ga. 386, 387 (2) (359 SE2d 664) (1987) ("Any ineffective counsel challenge will be deemed waived if the new attorney files an amended motion for new trial and does not raise the issue before the trial court so that the challenge can be heard at the earliest practicable moment, i.e., during the hearing on the amended motion").

[25] *Green*, supra; *Thompson*, supra.